Attachment one

Section II (D.)

Defendants

(1) Centurion Medical, ET. AL.,

Centurion Medical contracted to FL. DOC. to provide mecial care to all inmates in Florida Prison System violated under color of law the contractual agreement to provide specialist doctor care upon recommended diagnosis and treatment of specialist doctors showing an urgent need for such surgical procedure and treatment. This policy of deliberate indifference or custom of indifference to refuse specialist doctors treatment regimen to negate financial costs cause cruel and unusual punishment leading to advanced and additional injury as well as permanent injury thereby violating plaintiffs rights under not only the Eight Amendment but A.D.A title I and II for actions leading to loss of mobility and permanent injury under the Fourteenth Amendment.

2.) a) Dr. Alexis Figueroa for Suwannee Correctional Institution-Annex

Refused to honor specialist doctors recommendations for surgery by orthopedic specialist and further denied passes issued by orthopedic specialists, concerning rotator cup injuries to right and left shoulders.

B) Dr. Figueroa refused to follow recommendations of neurologic specialist doctor to have consult with neurosurgeon being deliberately indifferent to medical needs of back injury.

C.) Dr. Figueroa refused Plaintiff post-surgical care as given in the instructions for post-surgical trauma upon release from hospital and upon plaintiffs declaration of post-surgical trauma while at Lake Butler in that Dr. Figueroa denied Plaintiff post-surgical consult as ordered by orthopedic specialists, after surgery on left shoulder.

d.) Dr Figueroa over period of several examinations and consults stated repeatedly that he would make consult recommendations, order x-rays on fractured elbow, as well as issue passes for plaintiffs medicals needs were either deceptive or fraudulent representations under violation of Florida Statutes 458.331(K) and 456.072(M) under color of law <u>or</u> Dr. Figueroa is in violation of State Statute 458.33 (W) which states that delegating professional responsibilities where the licenscee delegating the responsibilities knows or has reason to know that such a person is not qualified by training, experience or licensure to perform them, in allowing institution or medical administrative personel who are not licensed or qualified to supercede specialist doctors recommendations and orders, then Dr. Figueroa is in violation under color of State Law for allowing such persons to dictate policy or custom in recommended specialist doctors orders in that these

individuals are being allowed to dictate medical policy denying medically necessary procedures and passes.

3.) Dr Bassa-outpatient medical director- R.M.C. Lake Butler.

a.) Refused to follow orthopedic specialist doctors order for post-surgical care for imobilization of left shoulder for 6 weeks following surgery.

B.) Dr. Bassa forced Plaintiff to start physical therapy two weeks following surgery against specialist doctors orders.

C.) Dr. Bassa refused 30 day follow-up consult as recommended by specialist orthopedic doctor, even after declaration of Post-surgical trauma caused by forced physical therapy causing damage to Plaintiff.

d.) Dr. Bassa refused to follow protocol for post-surgical trauma and countermanded post-surgical instructions given by hospital.

E) Dr. Bassa cleared Plaintiff for medical release without examination of orthopedic doctor as listed in recommendation for follow-up consult and per hospital instruction for post surgical trauma. Plaintiff saw only Dr. Ananjiwalla who is not any longer licensed to practice medicine in State of Florida but working under Dr. Bassa's license without proper supervision or follow-up examination.

4a.) Dr. Cruz- Medical director of Suwanne C.I. for Centurion medical is responsible to ensure through his handling of Dept. of Corrections grievance procedure that adequate medical care without is given without fraudulent

misrepresentations by personel under his prevue as cited under State statute 458.331(K).

b.) Dr. Cruz has the responsibility under State statute 459.33(w) to enure that medical and administrative personel of both Centurion medical, LLC and the Florida Dept. of Corrections who are not qualified to supercede Board Certified Specialist Doctors recommendations and order for medical care are allowed to deny those consults, passes, and regimens for prescription and medical care simply because they do not want such care given, Especially so in a federally founded A.D.A. documented institution.

C.) Dr. Cruz was made fully aware of violations of the preceeding statues through grievance procedures as set down in chapt. 33.303 State statutes.

d.) Dr. Cruz whose duties are to monitor and correct such oversites of violations of State regulations is deliberately indifferent to Plaintiffs pain and suffering after proper notifications of violations being committed.

See Also Section IV. Due to pre-existing injuries and post-traumatic injury to left rotator cup now permanently damaged from excessive time left injured; along with back injury leaving Plaintiff mobility impaired unable to have mobility without assistance as Plaintiff is in wheelchair, Centurion Medical answer to Plaintiff's injury of his back rather than to repair damage as recommended by neurologist in referral to neurosurgeon. Centurion Medical Et. Al., a contractual

agent of Florida Department of Corrections contracted to provide medical care to inmates has unnecessarily denied medical service to Plaintiff over an extended period of time. Said denial of Plaintiff's pre-existing injuries to left shoulder and post-traumatic surgical trauma leaving Plaintiff permanently disabled, along with untreated right shoulder rotator cup tear becoming severe due to Centurion Medicals refusal to acknowledge and treat this injury along with back injury both of which have been exacerbated inflicting excessive pain and suffering along with further injury to Plaintiff. Due to prolonged unnecessary delays, Plaintiff will require more extensive and painful medical procedures to correct and/or repair damage. As a result the Plaintiff is denied the following major life activities: Plaintiff suffers from increased pain and permanent disability from lengthy untreated period of medical indifference causing permanent damage this is followed by right shoulder rotator cup tear untreated, such that use of his arms to be mobile in wheelchair is severely hampered and now requires an impaired assistant to maneuver him in wheelchair. Plaintiff's ability to care for himself is severely limited to the limited availability of a competent assistant, performing any manual task, such as eating or bathing is increasingly painful. Plaintiff's increased pain substantially limit the amount of time Plaintiff can remain in any position.

Petitioner suffers pain following movement, denying any comfort when sitting for an extended period of time and/or attempting to lie prone for sleeping.

Petitioner is only able to sleep for short periods of time as any movement causes waking pain.

## IV. STATEMENT OF CLAIM

A.) Plaintiff was in a severe automobile collision injuring both right and left rotator cups in shoulder. Plaintiff was awaiting approval for funds for surgery after recommendation by orthopedic specialists when incarcerated.

B.)(1) Centurion Medical ( from August 31, 2018 to present) refused to follow recommendations and treatment of specialist doctors leaving Plaintiff to suffer pain, loss of mobility, permanent damage through their inaction to give care as instructed by specialists. This violates the Eighth Amendment of the U.S. Constitution for causing further harm, permanent damage to shoulders.

The following defendants are employees of Centurion Medical who are complicit in failure to give proper care or are demonstrative of the deliberate indifference standard:

1.) Centurion Medical - policy or assumed policy of deliberate indifference to medical needs, resulting in permanent damage.

2.)(A) Dr. Figueroa – Physician, Suwannee Correctional Institution-Annex

Dr. Figueroa is responsible for medical care at Suwannee Correctional Institution-Annex. Plaintiff arrive at this institution under declaration of poast-surgical trauma and was refused treatment for surgical trauma in accordance with specialist surgeon post-surgical instructions. Plaintiff filed grievances exhausting remedies to no avail.

(B) Plaintiff arrived at this institution with medical passes issued by specialist doctors at RMC to accommodate Plaintiff's medical needs. Plaintiff was refused these passes by Dr. Figueroa with no examination, no consult, stating these medically needy passes were not permitted at this institution according to policy, clearly deliberate indifference to medical needs.

(1) Plaintiff suffered from fractured left elbow that Dr. Figueroa stated, "He believed it was fractured and would put me in for X-ray". I never received X-ray or follow up even though I did put in for and went to sick-call to complain, asking why I never received X-ray for injury.

2.) Plaintiff has not been seen for or treated for injuries to right shoulder (torn rotator cup) or serious back injury (bulging disk pushing or nerve bundle) as recommended by orthopedic specialists and neurological specialists as shown in medical records of Plaintiff from 2009 to present, clearly showing a distinctive deliberate indifference policy, either corporate, or implied, assumed policy through actions.

3.) Dr. Bassa – (Receiving and medical center)Medical director of outpatient services – while at RMC for surgery, dr. Bassa refused to follow orthopedic specialist doctors prescribed treatment plan for post-surgery of left arm and shoulder bound immovable in sling for six-weeks with follow-up in 30 days and forced, over objection, to initiate physical therapy 2 weeks post-surgery causing Plaintiff to suffer unnecessary great pain and suffering until Plaintiff declared post-surgical trauma, according to the surgeon's post-surgical instructions, for surgical complications involving physical disfigurement and impaired movement or locking up of joint.

Plaintiff was seen by Dr. Anandjiwala, a physician working under Dr. Bassa's supervision because she is no longer licensed to practice in the State of Florida who stated that the X-rays showed proper bone alignment and refused Plaintiff's post-surgical consult with orthopedic specialist, the proper response to post-surgery trauma of a surgical nature. Dr. Bassa, in his capacity of head physician and medical director, knew or should have known that Plaintiff's injury and subsequent surgery were of cartilage, ligament, and musculature nature which would not show up in an X-ray and instead of following normal protocols for post-surgical trauma, refused further treatment or orthopedic consult contrary to post-surgical treatment plan and instructions given by hospital policy.

4.) Dr. Cruz (medical director of Suwannee Correctional Institution-Annex),

(a) Dr. Cruz denied Plaintiff medical care in that he is responsible to dictate policy for medical care and as such it was his responsibility to ensure that complications of post-surgical nature were properly addressed. Dr. Cruz not only denied Plaintiff the procedures of post-surgical trauma as dictated post-surgical instructions put out by hospital and orthopedic surgeon, but failed to examine or instruct Dr. Figueroa at annex to examine and/or provide a treatment plan to remedy this problem.

(b) Dr. Cruz, as medical director is responsible to ensure that all medical passes by specialist doctors deem necessary for proper medical care are honored at this institution. Dr. Cruz has either instituted policy to deny specialist doctors medical passes or has allowed institution personnel to dictate policy of refusing specialist doctors doctors orders and prescriptions for treatment, where unlicensed untrained institutional personnel are allowed to supersede medical requirements in violation of State Statutes 456.072 (a), and/or 458.331(w).

(c) Dr. Cruz as medical director is responsible for actions of all doctors and staff under his supervision to ensure that a policy of deliberate indifference to medical needs is not instituted by personnel under him.

Plaintiff asserts that due to Defendant's inaction through deliberate indifference policy, either individually and/or officially and corporate and/or assumed have caused permanent disability causing impediment of mobility and damage no longer correctable to left shoulder (while right shoulder rotator cup left untreated) has become increasingly more painful and is rapidly following the same degradation as caused permanent damage to left shoulder. Also, failure of Centurion Medical to follow neurological specialist doctor's recommendation for referral to neurosurgeon to correct back injury is leading to lifelong injury and loss of mobility.

## SECTION VI. RELIEF

1.) Temporary injunction for immediate medical care by both orthopedic and neurologic doctors as recommended by specialists to receive proper medical care.

2.) Money damages for pain and suffering causing permanent lifelong damage and disability through their deliberate indifference in the amount of 350 thousand dollars, along with punitive damages of 250 thousand dollars under the 14th Amendment U.S. Constitution for causing permanent damage and disability through their deliberate difference.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**RECEPTION AND MEDICAL CENTER-MSU**
**OPERATIVE REPORT**

**OUTPATIENT**

| | |
|---|---|
| **NAME:** | **DERKS, LARKIN** |
| **NUMBER:** | **849475** |
| **DATE:** | **08-31-18** |
| **PREOP DIAGNOSIS:** | **Rule out tearing of rotator cuff with impingement changes of acromioclavicular joint region left shoulder.** |
| **POST OP DIAGNOSIS:** | **Massive tear of rotator cuff with significant impingement, changes of acromioclavicular joint region, tear of the long head of the biceps and some tearing of the labrum.** |
| **SURGEON:** | **Tom Winters, M.D.** |
| **ASSISTANT:** | **Ricardo Hurtado.** |
| **ASSISTANT:** | **Ruben Morillo.** |
| **ANESTHESIA:** | **General.** |
| **PROCEDURE:** | **Arthroscopy with shaving, followed by closed rotator cuff repair, closed Mumford Procedure, resecting 1.5 centimeters of the distal clavicle and a closed anteroinferior acromioplasty.** |
| **COMPLICATIONS:** | **None.** |

**HISTORY**: Mr. Derks is a 64 year old gentleman who has been having problems with his left shoulder. He has failed all attempts to conservative care. He is brought in for surgery.

**INTRAOPERATIVE FINDINGS:** Mr. Derks did have a massive tear in the rotator cuff. He had a complete tear of the long head of the biceps. The stump was still there. We did debride this area. He had tearing of the labrum around this. He did have significant impingement and changes of the acromioclavicular joint region. We were able to get the rotator cuff mobilized after repairing it with excellent repair.

**OPERATIVE NOTE:** After successful induction of general anesthesia, in the supine position, patient's shoulder was put through the range of motion. He was then placed on his side with the left arm in the arm holder, prepped and draped in the usual fashion. The arthroscope as inserted through a posterior approach up to 1.5 centimeters distal to the tip of the acromion and aimed toward the coracoid process. The joint ws first distended with fluid. Full exploration of the joint was then undertaken. The glenohumeral joint was visualized as well as the long head of the biceps, which was noted to have a complete tear. The stump was attached, but this had torn distal to this. There was noted to be tearing of the labrum. We did shaving of this and did resection of the stump of the long head of the biceps.

Continued page two:

**FLORIDA DEPARTMENT OF CORRECTIONS**
**RECEPTION AND MEDICAL CENTER-MSU**
**OPERATIVE REPORT**

**NAME:** **DERKS, LARKIN**
**NUMBER:** **849475**
**DATE:** **08-31-18**

Page two:

We visualized both anterior and posterior and did shaving on the contralateral side. Following this, the arthroscope was inserted in the subacromial region where there was noted to be massive tearing of the rotator cuff, the supraspinatus and infraspinatus tendons. We were able to get this mobilized. We used the heat probe and the shaver to resect the soft tissue and then did a closed anteroinferior acromioplasty and a closed Mumford Procedure. We had to decompress the humeral head. We were able to get this down to good cancellous bone. Following this, we were able to visualize the rotator cuff tear from posterior and laterally. We then visualized posteriorly and passed the four arms of the two sutures through the infraspinatus portion of the cuff tear. We were able to bring this up and over and put it into the greater tuberosity with an anchor. This was just distal to the surface and came down very nicely. We got about 70% rotator cuff repair with this. We then used the four arms of the set of two sutures and brought the remaining portion of it up and over and put it through an anchor. The anchor was then pounded down. We were able to get an excellent repair. The sutures were then cut. Final visualization made from posterior and laterally with an x-ray being obtain. The area was then thoroughly irrigated out with irrigation fluid being removed. Portal sites were then closed. Dressings were applied. Mr. Derks was placed into a sling and taken to the recovery room stable.

**Tom Winters, M.D.**
**TW:pj**
**D: 08-31-18 T: 09-06-18**
**RMC Lake Butler, FL**
**DC4-715A**

Fax Server 8/4/2010 8:31:58 AM PAGE 33/088 Fax Server

64 Slice CT
CT- Angiography
CT- Cardiac Angiography
CT- Endoscopy
CT- Fluoroscopy
CT- Neuroradiology
CT- Orthopedic
CT- Preventive Health
MRA
MRI-High Field
MRI-Open
P.E.T. Dedicated
Nuclear Stress Test
Exercise Stress Test
Ultrasound
Echocardiography and Vascular Imaging
Stress Echocardiography
Dexascan
X-Ray

PATIENT: LARKIN DERKS
D.O.B.:
ACCOUNT NUMBER: 320667.0
DATE OF EXAM: 08/01/2008
REFERRAL PHYSICIAN: RITCHIE PLUMMER, D.O.

Examination: MRI of the Left Shoulder

Clinical: Patient with bilateral shoulder, arm and neck pain status post MVA. Please evaluate.

Technical: The examination was performed obtaining multiplanar imaging utilizing multiweighted technique through the left shoulder.

Findings: There are no previous examinations currently available for comparison.

Rotator Cuff: There is supraspinatus signal abnormality consistent with tendinopathy. There is a small, full thickness mildly retracted tear at the anterior insertion. No other tears are seen in the rotator cuff. The muscles are normal in size and signal intensity.

Osseous Structures and Bone Marrow: There is acromioclavicular degenerative joint disease without impingement. There is a small osteophyte arising from the humeral head consistent with mild glenohumeral degenerative joint disease.

Biceps Tendon and Labrum: The long and short heads of the biceps tendon are intact with no evidence of tear or significant tendinopathy. No displaced labral tears are identified.

Joint Spaces and Soft Tissues: No significant joint or bursal fluid is noted. No soft tissue masses or paralabral cysts are identified.

IMPRESSION:

1. Supraspinatus tendinopathy with a small full thickness tear as described above.
2. Acromioclavicular degenerative joint disease without impingement.
3. Mild glenohumeral degenerative joint disease.

Electronically verified by:

Ryan D. Murtagh, M.D.
RDM:law D/T: 08/01/08, 08/04/08

Thank you for referring this patient to our imaging center. We encourage consultation and invite you to ask any questions you may consider pertinent to patient treatment and this interpretation.

This document has been electronically signed and approved

9238 U.S. HIGHWAY 19 • PORT RICHEY, FL 34668 • (727) 849-8492 • FAX (727) 849-3472

64 Slice CT
CT- Angiography
CT- Cardiac Angiography
CT- Endoscopy
CT- Fluoroscopy
CT- Neuroradiology
CT- Orthopedic
CT- Preventive Health
MRA
MRI-High Field
MRI-Open
P.E.T. Dedicated
Nuclear Stress Test
Exercise Stress Test
Ultrasound
Echocardiography and Vascular Imaging
Stress Echocardiography
Dexascan
X-Ray

PATIENT: LARKIN DERKS
D.O.B.:
ACCOUNT NUMBER: 320867.0
DATE OF EXAM: 08/01/2008
REFERRAL PHYSICIAN: RITCHIE PLUMMER, D.O.

**Examination:** MRI of the Right Shoulder

**Clinical:** Patient with bilateral shoulder, arm and neck pain status post MVA. Please evaluate.

**Technical:** The examination was performed obtaining multiplanar imaging utilizing multiweighted technique through the right shoulder.

**Findings:** There are no previous examinations currently available for comparison.

Rotator Cuff: There is severe tendinopathy of the supraspinatus and infraspinatus with a full thickness tear of the supraspinatus just inferior to the acromion. The proximal portion is retracted to the level of the glenohumeral joint. There is no other tear seen in the rotator cuff. The muscles are normal in size and signal intensity, although portions of the supraspinatus muscle belly are not well seen on the sagittal images due to the retraction.

Osseous Structures and Bone Marrow: There is a defect within the anterosuperior humeral head which likely represents a reverse Hill-Sach's deformity. Subjacent degenerative cystic changes are noted. There is acromioclavicular degenerative joint disease without impingement. Signal abnormality along the glenoid and in the subchondral bone is consistent with glenohumeral degenerative joint disease.

Biceps Tendon and Labrum: There is biceps tendinopathy without full thickness tear or dislocation.

Joint Spaces and Soft Tissues: No significant joint or bursal fluid is noted. No soft tissue masses or paralabral cysts are identified.

**IMPRESSION:**

1. Severe supraspinatus and infraspinatus tendinopathy with full thickness tear of the supraspinatus.
2. Hill-Sach's deformity from prior dislocation. This can be correlated with CT and/or radiographs.

Continued on page two....

9233 U.S. HIGHWAY 19 • PORT RICHEY, FL 34668 • (727) 849-8492 • FAX (727) 849-3472

[illegible] FAX SERVER

Medical Center

[illegible]

Admission: 409 JC

Account #: 320667 4 RITCHIE PLUMMER, D.O

Age: 55

Name: LARKIN DERKS

Nurse Comment: [illegible]

Date: 10/13/08 4:45

Nurse Initial: CA

Weight: 238 BP: [illegible] Pulse: 72 Temp: 97.1 Resp: 16 Visual Acuity: R ___ L ___ Bilat ___

Allergies: NKA Darvon / Codeine

Are you using GCMC physicians for your Primary Medical Doctor? YES NO Family Doctor: ___ Out of State ___

CC: Pt c persistent neck [illegible]
HPI: [illegible] shoulder pain, radiating [illegible]

Has patient had any lab/x-ray tests since last exam? YES NO
Any lab/x-ray tests ordered? YES NO

Location, Quality, Severity, Duration, Timing, Context, Associated Symptoms, Signs of Chronic Diagnosis

Review of Systems / GCH Reviewed Medical History Form

| | | | |
|---|---|---|---|
| General | | GU | |
| Eyes | | MS | |
| ENT | | Skin | |
| Cardio | | Psych | |
| Resp | | Endo | |
| Gastro | | Neuro | |

Medications: Refer to Electronic Rx
Reviewed / Changed / New / Samples
Dosage Instructions & Side Effects
Reviewed with Patient
[illegible]

PMH
HTN / DM / Thyroid / Renal
Lung / CA / Other [illegible]

PSH: [illegible]

FH
HTN / DM / Thyroid / Renal
Lung / CA / Other

SH
Smoker ___ pack/yrs / Cessation
ETOH / Social / Abuse / Counsel
Physical Abuse / Spouse/Abuse

Document Additional Meds not in Rx System: [illegible]

Assessment of Pain: No Pain / Distressing Pain / Unbearable Pain (0–10)

PE: Head, Eyes, ENT, Heart, Lungs, Abd, Ext, Neuro, MSk, Psych

[illegible] moderate to severe pain [illegible]
C-spine [illegible]
[illegible] shoulder [illegible]

Working Diagnosis:
1 Cervical strain [illegible]
2 Bilateral shoulder pain [illegible]
3 [illegible]

Treatment Plan:
1 [illegible]
2 [illegible]
3 [illegible]

Referrals: [illegible]

| CONSULT | NEW | EST |
|---|---|---|
| 99241 | 99202 | 99212 |
| 99242 | 99203 | 99213 |
| 99243 | 99204 | 99214 |
| 99244 | 99205 | 99215 |
| 99245 | | |

Recheck: ___ Days ___ Wk ___ Mo ___ Scheduled

Physician Signature:
Nurse Signature: [illegible]
Patient Signature:

Time Out: 4:38p Discharge

Ritchie Plummer D.O.

at discharge

FOUCEN/Encounter_Medical OV_10-1-08_417.1 2008 Copyright Gulf Coast Medical Center

Case 5:15-cv-00051-MW-GRJ Document 42-2 Filed 02/01/16 Page 48 of 73

Continued
Page 2 of 2

Derks, Larkin
320887
08/01/08
MRI of the Right Shoulder

Impression continued...

3. Glenohumeral degenerative joint disease.
4. Acromioclavicular degenerative joint disease without impingement.

Electronically verified by:

______________________________

Ryan D. Murtagh, M.D.
RDM:lew D/T: 08/01/08, 08/04/08

Thank you for referring this patient to our imaging center. We encourage consultation and invite you to ask any questions you may consider pertinent to patient treatment and this interpretation.

This document has been electronically signed and approved

PORT RICHEY SOUTH
9238 U.S. Highway 19
Port Richey, FL 34668
(727) 849-8492
(727) 849-3472 Fax

PORT RICHEY NORTH
11528 U.S. Highway 19
Port Richey, FL 34668
(727) 868-0152
(727) 863-4026 Fax

Fax Server 3/2/2010 7:01:38 PM PAGE 15/035 Fax Server

Medical [illegible]

[illegible] County [illegible] Medical Facility

Admission 8:50 (am) · 7:30 · Account #: 320667 · RITCHIE PLUMMER, D.O · Age: 54 · M

Name: LARKIN DERKS · Date: 09-03-2008

Nurse Comments: MVA - 7-24-08 · F. Bonnet [illegible] vehicle · [illegible] · Nurse Initials: [illegible] · Occupation · cook [illegible]

Vitals: 219 / 162 · Pulse 79 · Temp 98.2 · Resp [illegible] · Visual Acuity: R ___ L ___ Both ___

Allergies: ☐ NKA · Advair, codeine

Are you using GCMC physicians for your Primary Medical Doctor? ☐ YES ☐ NO · Family Doctor · Out of State?

CC/HPI: pt referred [illegible] · Pt ↑ persistent [illegible] ↑ radiation 3 yr [illegible] ↓ bilateral shoulder pain · Has patient had any labs/tests [illegible]? ☐ YES ☐ NO · Labs/tests [illegible] ☐ YES ☐ NO

Location, Quality, Severity, Duration, Timing, Context, Associated Symptoms, Signs of Chronic Disorder

| Hx | ROS Reviewed Medical History Form | | | |
|---|---|---|---|---|
| | General [illegible] | | GU | |
| | Eyes | | MS [illegible] | |
| | ENT | | Skin | |
| | Cardio [illegible] | | Psych | |
| | Resp | | Endo | |
| | GI | | Neuro [illegible] | |

Medications (Refer to Electronic list): ☐ Renewed ☐ Changed ☐ New ☐ Samples · ☐ Dosage Instructions & Side Effects · ☐ Reviewed with Patient

[illegible] 7 yr. · Has seen [illegible] · Dr. [illegible] · Recommended surgery · [illegible] shoulders & cervical

PMH: ☐ HTN ☐ DM ☐ Thyroid ☐ Renal · ☐ Lung ☐ CA ☐ Other · [illegible] · FH: [illegible] ☐ HTN ☐ DM ☐ Thyroid ☐ Renal · ☐ Lung ☐ CA ☐ Other

SH: ☐ Smoker ___ packs/yr ☐ Counsel · ☐ ETOH ☐ Social ☐ Abuse ☐ Counsel · ☐ Physical Abuse ☐ Spousal Abuse

Document Additional Meds not in Rx System: [illegible] · semi relief

Assessment of Pain: No Pain · Unbearable Pain · 0 – 10 [illegible]

Exam: Head · Eyes · ENT · Heart · Lungs · Abd · Ext · Neuro · MS · Psych

Alert · ox 3 & moderate distress · Some relief [illegible] · Cervical · ↓ ROM · shoulders - ↓ abduction < 90° · palpable tenderness [illegible] cervical & [illegible] bilateral

Working Diagnosis:

1. Cervical strain [illegible] · due [illegible] · radiculopathy 3 yr [illegible]
2. Bilateral shoulder strain · [illegible]
3. Hx of [illegible] shoulder [illegible]

Treatment Plan: [illegible] · 3 yr [illegible] · [illegible] · 1. Pt [illegible] to have surgery shoulders & cervical - Dr. [illegible] · 9/17/08

Bed rest ___ Days ___ Wk ___ Mo ___ · Scheduled:

| CONSULT | NEW | EST |
|---|---|---|
| 99241 | 99202 | 99212 |
| 99242 | 99203 | 99213 |
| 99243 | 99204 | 99214 |
| 99244 | 99205 | 99215 |
| 99245 | | |

Physician Signature: Ritchie Plummer D.O. · Time Out · Discharge

Nurse Signature:

Patient Signature: · of discharge

#2 unable to work · due to injuries · awaiting surgery · #3 Refill meds · [illegible] · [illegible] · Soma [illegible]

FOR CBS/Encounter/Medical OV/08-04-08/417.1

DERKS MR-000063

cc PE

This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and privileged information that is exempt from public disclosure. Any unauthorized review, use, disclosure, or distribution is prohibited. If you have received this message in error please contact the sender (by phone or reply electronic mail) and then destroy all copies of the original message.

Reception and Medical Center
P.O. Box 628
7765 South CR331
Lake Butler, FL 32054
(386) 496-6348

REQUESTED BY: Nalini Anandjiwala MD, DE06
Reception and Medical Center WU - 208
7765 South CR 231
Lake Butler, FL 32054

Patient Name: LARKIN LLOYD DERKS
Date of Birth:
Date Requested: November 15, 2010
Procedure Date: November 19, 2010
Procedure(s): Spine Cervical

Patient #: 849475
Age: 57Y Gender: Male
Time Performed: 8

**History:**
NEEDS FLEX/EXTEND C-SPINE XRAYS FOR NEUROSURGEON

**Report:**
CERVICAL SPINE SERIES: In the neutral lateral projection there is evidence of intervertebral body fusion of C3 and C4 and probably of the posterior elements as well. There is mild anterolisthesis of C4 in relation to C5 of approximately 3 mm, with flexion manouver, the degree of anterolisthesis increased to approximately 5 mm, and extension manouver, contributes to correction of the degree of anterolisthesis. The lower intervertebral disc spaces appear symmetric. The odontoid process is intact. There are hypertrophic changes in the articulating facets but worse at the C5-6 and C6-C7 level on the right side.

IMPRESSION: THERE IS EVIDENCE OF INSTABILITY AT THE C4-5 LEVEL WITH FLEXION AND EXTENSION MANEUVERS. THE DEGREE OF ANTEROLISTHESIS IS CORRECTED WITH EXTENSION MANEUVER. DETAILS AS ABOVE.

Thank you for this referral.

Dictating Radiologist: E. E. FRANCO, M.D.
Transcribed by: SCT Transcription Date: November 19, 2010

Electronically Signed By: E. E. FRANCO, M.D. on 11/19/2010 at 10.46

E. HERCULE, M.D.
CHIEF HEALTH OFFICER
LIBERTY C.I. / QUINCY ANNEX
4-6-11

RECEIVED
FEB 10 2011
MEDICAL RECORDS
RMC

# CONSULTANT'S REPORT

**NO PROCEDURE(S) MAY BE PERFORMED WITHOUT PRIOR APPROVAL BY THE REGIONAL MEDICAL EXECUTIVE DIRECTOR, DEPARTMENT OF CORRECTIONS**

**Additional History:** 59 y/o male pt c̄ hx of low back pain radiating to (L) LE.
MRI lumbar spine abnormal with disc bulges of L4-5 + (L) with (L) NF stenosis. Also disc bulge at L2-3 L3-4

**Findings:** Pt reports Ibuprofen, Naproxen [illegible] not working back pain severe.

Exam: Alert oriented x3. speech normal
CN's: II → XII NI
motor: (L) LE 3+/5 prox. distal 4+/5
DTR's +1 (L) knee +2 (R) knee Ankles +1
sensory LT OK
coord - OK
Gait - W.C.
Lumbar mild (L) paraspinal spasm

**Recommendations:** Imp: 1) Moderate to severe (L) low back pain due to L4-5 disc bulge / herniation to (L). Also multilevel DDD, DSD.
2) (L) Peroneal nerve axonal motor neuropathy suspect pressure related
3) Gait difficulty 2/y to #1.

Rec: 1) Neurosurgical consult.
2) Robaxin 500 mg PO QHS.
3) RTC as needed.

CARLOS GAMA, MD
NEUROLOGIST
RMC

**Consultant Signature/Stamp:** [signature] **Date:** 9/23/13

**IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY SCHEDULING INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION**

USE ADDITIONAL SHEET(S) AS NECESSARY

B-849475 TM 40 12/12/2012
DERKS, LARKIN

RMC (F)

10/16/13
N. CARRERO M.D.
[illegible] RMC

DC4-702 (Revised 12/1/10) Page 2 of 2

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
CONSULTATION REQUEST/CONSULTANT'S REPORT

[illegible]

AUTHORIZATION FOR SPECIALTY EVALUATION

[illegible]

IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY SCHEDULING INFORMATION PENDING [illegible] APPOINTMENT OUTSIDE THE INSTITUTION [illegible]

B-349475 TM 40 12/12/2012
DERKS, LARKIN
W/M DOB (59) 99

RECEIVED

**PART B - RESPONSE**

| DERKS, LARKIN | 849475 | 2007-231-009 | SUWANNEE C.I. ANNEX | N1103L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy has been received, reviewed, and evaluated.

Further review into your grievance reveals the following information
You were advised that you will be issued a inmate impaired assistant when the Annex Medical Impaired Nurse has completed the training of the new assistants. Medical has to train inmates that meet the criteria and submit a list to Classification when their training is complete. Once that list is received and Classification conducts ICT, the institutional ADA coordinator will receive the new ICT list with the new assistants to start assigning them to other impaired inmates. There are currently (19) inmates as assistants that are assigned to impaired inmates.

Based on the foregoing information, your grievance is approved.

Mailed: 7.9.20

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

F. Cruz MD
Suwannee C

| [signature] | S. Crawford [signature] | 7.8.20 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

24A
ADA

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

| DERKS, LARKIN L. | 849475 | SUWANNEE C.I. ANNEX |
|---|---|---|
| Last First Middle Initial | DC Number | Institution |

**Part A – Inmate Grievance**

I DO NOT have AN IMPAIRED ASSISTANT. I have had A PASS for IMPAIRED ASSISTANT issued AUG. 19, 2019, but have NOT been given AN ASSISTANT. I wrote AN INFORMAL grievance About This issue After being Told REPEATEDLY That ONE would be Asigned when TRAINED. The informal grievance WAS APProved SEVERAL MONTHS AGO AND I have waited PATIENTLY, but NO IMPAIRED ASSISTANT has been Asigned. I have waited for AN ASSISTANT To be Asigned for 10 MONTHS.

July 02, 2020
DATE

[signature] 849475
SIGNATURE OF GRIEVANT AND D.C. #

***BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _____ / _____
# Signature

2007-231-009

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
JUL 07 2020
ASSISTANT WARDEN - PROGRAMS
SUWANNEE CORRECTIONAL INSTITUTION

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____ (Date) Institutional Mailing Log #: _____ [signature] (Received By)

DISTRIBUTION: INSTITUTION/FACILITY: INMATE (2 Copies), INMATE'S FILE, INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE: INMATE, INMATE'S FILE - INSTITUTION/FACILITY, CENTRAL OFFICE INMATE FILE, CENTRAL OFFICE GRIEVANCE FILE

SEE ATTACHED RESPONSE
7/9

**PART B - RESPONSE**

| DERKS, LARKIN | 849475 | 2004-231-057 | SUWANNEE C.I. ANNEX | N1103L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy has been received, reviewed, and evaluated.

You were advised that you will be issued a inmate impaired assistant when the Annex Medical Impaired Nurse has completed the training of the new assistants. Medical has to train inmates that meet the criteria and submit a list to Classification when their training is complete. Once that list is received and Classification conducts ICT, the institutional ADA coordinator will receive the new ICT list with the new assistants to start assigning them to other impaired inmates. There are currently (16) inmates as assistants that are assigned to an impaired inmates.

Based on the foregoing information, your grievance is approved.

Mailed: 5.4.20

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

| [signature] F. Cruz, ML | [signature] ~~F. MOCK ASSISTANT WARDEN~~ ACTING WARDEN | 5.1.20 |
|---|---|---|
| SIGNATURE AND TYPED OR ~~PRINTED~~ SIGNED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

FLORIDA DEPARTMENT OF CORRECTIONS

24A ADA

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

| DERKS, | LARKIN | L. | 849475 | SUWANNEE C.I. ANNEX |
|---|---|---|---|---|
| Last | First | Middle Initial | DC Number | Institution |

**Part A – Inmate Grievance**

I have an Impaired inmate assistant pass issued on 8-19-2019. I have tried Repeatedly to get ADA medical coordinator to assign an Impaired assistant to no avail. This is Reflected in ADA management and service plans dated 10-13-19 and again in 01-15-2020. I have been told repeatedly that one will be assigned when available. This has been going on for more that a year and nothing has been done.

I have a disabled left shoulder, a torn rotator cuff in right shoulder and am in wheelchair from impacted vertebrae and herniated discs. I am a non-ambulatory, a W-3, T-3, and P-3, and have not been given an impaired assistant as prescribed by doctor.

April 24, 2020
DATE

[signature] 849475
SIGNATURE OF GRIEVANT AND D.C. #

***BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** ____ / ____
# Signature

2004-231-057

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
APR 27 2020
Assistant Warden - Programs
Suwannee Correctional Institution

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: ____________ Institutional Mailing Log #: ____________ [signature] (Received By)
(Date)

SEE ATTACHED RESPONSE 1/14

DISTRIBUTION: INSTITUTION/FACILITY
INMATE (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

Uf
AW
M1103-L

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

| DERKS, LARKIN L. | 849475 | SUWANNEE C.I. ANNEX |
|---|---|---|
| Last First Middle Initial | DC Number | Institution |

**Part A – Inmate Grievance**

SIR, I AM WRITING THIS GRIEVANCE PERTAINING TO MEDICAL PROBLEMS AND REFUSED TREATMENT FOR SERIOUS MEDICAL ISSUE CAUSING CRUEL AND UNNECESSARY PUNISHMENT.

I AM SUFFERING FROM A MODERATE RECTAL DYSFUNCTION WHICH CAUSES PERIODIC AND SOMETIMES PROBLEMATIC LEAKAGE. I AM BEING DENIED MEDICAL CARE FOR THIS PROBLEM. I HAVE BEEN TO SICK-CALL AND TOLD I WOULD RECIEVE A PASS EITHER FOR SHOWER AS NEEDED OR FOR DIAPERS. I WAITED A MONTH AND THEN FILED REQUEST TO MEDICAL WHICH WENT UNANSWERED. I AM BEING FORCED TO SIT IN EXCREMENT SOILED CLOTHES BEING DENIED THE RIGHT TO TAKE A SHOWER SOMETIMES FOR HOURS BECAUSE OF SHOWER RESTRICTIONS TILL AFTER 5:00 P.M. ONLY THOSE WITH A PASS TO SHOWER OR WEAR DIAPERS ARE ALLOWED TO SHOWER BEFORE 5:00 P.M. THIS IS CRUEL PUNISHMENT AND SHOULD NOT BE ALLOWED.

I NEED TO BE ABLE TO TAKE CARE OF MY MEDICAL NEEDS. REFERING ME BACK TO SICK-CALL WOULD NOT ALLEVIATE PROBLEM, I HAVE ALREADY BEEN TO SICK-CALL AND FILED WHEN NOTHING WAS DONE AS PROMISED.

JAN. 5, 2020
DATE

[signature] 849475
SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: ________ / ________
# Signature

2001-231-027

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED

JAN 07 2020

Assistant Warden - Programs
Suwannee Correctional Institution

Submitted by the inmate on: ____________ (Date)

Receipt for Appeals Being Forwarded to Central Office

Institutional Mailing Log #: ____________

[signature]
(Received By)

DISTRIBUTION: INSTITUTION/FACILITY
INMATE (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

SEE ATTACHED RESPONSE
2/19

**PART B - RESPONSE**

| DERKS, LARKIN | 849475 | 1905-231-015 | SUWANNEE C.I. ANNEX | M1103L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed & evaluated.

Investigation into your grievance reveals the following:
Be advised your allegations against the health care staff are unfounded. Also you are advised that inmates do not have the authority to dictate disciplinary action on health care staff members. This was previously addressed with you by nursing during your sick call appointment on 2/14/19 and in an informal grievance #231-1902-0049 on 3/5/19. The informal response and the nurses explanation were appropriate and accurate responses. "it was explained to you (2/14/19) that on 1/22/19 the MD noted in your chart 'passes renewed according to policy'. At that time you expressed understanding and gave a verbal warning to the nurse that "you would add the MD to your current law suit". On 1/22/19 the MD issued passes for Low Bunk, Restricted Activity (No push/pull >20lbs & no stand > 20min.) and Wheel Chair w/cushion. It is a clinical decision, if an inmate, will be issued a pass for medically necessary items. If you have any further medical questions or concerns you may access sick call to have them addressed.

Based on the foregoing your grievance has been DENIED.

You may obtain further administrative review of your complaint by obtaining form DC1-303. Request for Administrative Review or Appeal, Completing the form, providing attachments as required by 33-103.007(3)(a) and (b), F.A.C. and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun, Tallahassee, Fl. 32399-2500, within Fifteen(15) days from date of this response.

MAILED 5.17.19

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

F. Cruz, MD
Suwannee C.I.
SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING

F. MOCK
ASSISTANT WARDEN
SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE

5.16.19
DATE

This consult never took place - can be verified through security call-out placement.

STATE OF FLORIDA DEPARTMENT OF CORRECTIONS
REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

7e
H8

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

| DERKS, LARKIN L. | 849475 | SUWANNEE C.I. ANNEX |
|---|---|---|
| Last First Middle Initial | DC Number | Institution |

**Part A – Inmate Grievance**

I have only been seen by Dr Figueroa one time at this institution where he stated that I would receive passes from this institution to correspond with passes I came here with from other institutions and hospital, including specialist doctors. I was also told that Dr. Winters would be contacted about post-surgical trauma I declared before coming here from hospital. None of this was done, nor was going to sick-call where I was told the passes I was to be given would be forthcoming as this institution would not allow those types of passes here. This is in direct violation of Florida Law, § 458.331(1) – Grounds for disciplinary action as specified in statute 456.072(2)(a)(N) states making deceptive, untrue or fraudulent representations in or related to the practice of medicine or employing a trick or scheme in the practice of medicine. This is listed as grounds for denial of license or disciplinary action.

In context, any administrative or medical personel who knowingly alter, change, or otherwise misconstrue a licensees profession is guilty of violating state statute 456.072(a), as well as statute 456.072(2)(M). Also in violating statute 458.331(w) which states that delegating professional responsibilities where the licensee delegating the responsibilities knows or has reason to know that such person is not qualified by training or experience or licensure to perform them. Institution administrative personel are not licensed or qualified to supercede doctors orders just because they don't want medically necessary passes.

5-06-19
DATE

[signature] 849475
SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

1905-231-015

_____ / _____
\# Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
MAY 09 2019
Assistant Warden - Programs
Suwannee Correctional Institution

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____ Institutional Mailing Log #: _____

[signature]
(Received By)

DISTRIBUTION:

INSTITUTION/FACILITY
INMATE (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

SEE ATTACHED RESPONSE

16/17

DC1-303 (Effective 11/13)

Incorporated by Reference in Rule 33-103.006, F.A.C.

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

RECEIVED JUN 06 2019 Department of Corrections Inmate Grievance Appeals

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☐ Warden ☐ Assistant Warden ☒ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

DERKS, LARKIN L. — 849475 — SUWANNEE C.I. ANNEX

Last First Middle Initial — DC Number — Institution

Part A – Inmate Grievance — 19-6-21647

I AM SENDING THIS TO YOU IN HOPES OF RESOLVING THIS ISSUE AS STATED IN GRIEVANCE 1905-231-015. I HAVE BEEN AT THIS INSTITUTION FOR 5½ MONTHS. I CAME HERE WITH MEDICAL PASSES ISSUED BY ORTHOPEDIC SPECIALISTS TO ACCOMODATE MY INJURIES AFTER DECLARING POST-SURGICAL TRAUMA IN SEPT. 2018. I SAW DR FIGUEROA ON 1-22-19 WHO VERBALLY STATED THAT THE BUTTON-UP SHIRT PASS AND SINGLE BUNK PASS WOULD BE ISSUED FOLLOWING SPECIALISTS RECOMMENDATIONS. THEY WERE NOT ISSUED. I WAS TOLD AT SICK-CALL ON 2-14-19 THAT THIS CAMP DOES NOT HONOR THOSE TYPES OF PASSES AND DO NOT FOLLOW SPECIALISTS RECOMMENDATIONS. I WAS ALSO TOLD THAT ORTHOPEDIC DOCTOR WOULD BE CONTACTED ABOUT POST-SURGICAL TRAUMA. THIS, ALSO, WAS NOT DONE. TELLING, OR GIVING, MAKING DECEPTIVE, UNTRUE, OR DECEPTIVE REPRESENTATIONS IN/OR RELATING TO MEDICAL CARE OR PRACTICE OF MEDICINE IS IN VIOLATION OF STATE STATUTES GOVERNING MEDICAL CARE. ALSO AN INSTITUTION POLICY WHICH SUPERCEDES MEDICAL CARE FROM DULY AUTHORIZED SPECIALIST DOCTORS IS ALSO IN VIOLATION OF STATE STATUTES AND STANDARDS, NOT BEING MEDICAL PROFESSIONALS NOR LISCENCED AS SUCH BUT DICTATING MEDICAL POLICY CONTRARY TO STATUTORY REQUIREMENTS. SEE: SS. 456.072(a), AND 456.072(2)(M), 458.331(W).

I HAVE NO DOCTOR OR ANY OTHER RELATED SPECIALIST IN MEDICAL FIELD EXCEPT FOR THIS AS STATED AND THIS IS SUPPOSED TO BE AN A.D.A. INSTITUTION. I HAVE A LEFT SHOULDER, SEVERELY DAMAGED, STILL, AFTER SURGERY, A TORN ROTATOR CUP IN RT. SHOULDER, AND I AM IN A WHEELCHAIR WITH SEVERE BACK INJURIES. I AM RECEIVING NO MEDICAL CARE FOR INJURIES AT ALL, SO YES, I DO HAVE A LAW SUIT IN PROGRESS. I REQUIRE MEDICAL TREATMENT AND SHOULD NOT BE FORCED TO GO TO ATT'NY GENERAL AND JUSTICE DEPARTMENT TO GET RELIEF.

MAY 22, 2019 — DATE

Larkin Derks 849475 — SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: 1 / Larkin Derks — # Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: 5/24/19 (WM) (Date) Institutional Mailing Log #: ______ (Received By)

07e

DISTRIBUTION: INSTITUTION/FACILITY — INMATE (2 Copies), INMATE'S FILE, INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE — INMATE, INMATE'S FILE - INSTITUTION/FACILITY, CENTRAL OFFICE INMATE FILE, CENTRAL OFFICE GRIEVANCE FILE

1905-231-015

(14)

WITH AGENCY CLERK
JAN 04 2019
Department of Corrections
Bureau of Inmate Grievance Appeals

PART B - RESPONSE

| DERKS, LARKIN | 849475 | 18-6-52675 | SUWANNEE C.I. ANNEX | M1103L |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative review has been received, reviewed, and evaluated.

A review of the formal grievance log database reveals that formal grievance #1811-209-024 was responded to and mailed to you. You should have received your response by now.

Based on the foregoing information, your appeal is returned with no action.

A. Keaton

| | A. Keaton | 12/14/18 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

I NEVER RECEIVED THIS GRIEVANCE BACK,

DEPARTMENT OF CORRECTIONS

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

DEC 13

Department of Corrections
Inmate Grievance Appeals

TO: ☐ Warden ☐ Assistant Warden ☒ Secretary, Florida Department of Corrections

From: DERKS, LARKIN L. (Last, First, Middle Initial) — 849475 (Number) — R.M.C. (MAIN) (Institution)

**Part A – Inmate Grievance** 18-6-52675

This grievance is in reguards to formal grievance log number 1811-209-024 filed and logged in on November 07, 2018. This medical grievance was never answered as of this date 12-04-18 and is in violation of chapter 33-303 of the Florida Administrative code.

I have severe post surgical trauma which has not been addressed properly by qualified orthopedic specialists. I was told to report any abnormalities or complications by surgical staff to sick-call, as I did. I have also been refused an evaluation recommended by orthopedic doctor and now have disfigurement in affected area pertaining to muscle and ligament trauma, along with severe pain more than 3 months after Aug. 31, 2018 surgery.

DEC. 04, 2018
DATE

[signature] 849475
SIGNATURE OF GRIEVANT AND D.C. #

***BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** ____ / ________
\# Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Submitted by the inmate on: 12/6/18 (Date)

Receipt for Appeals Being Forwarded to Central Office
Institutional Mailing Log#: 209-4051

[signature] (Received By)

12/5/18

DISTRIBUTION:

INSTITUTION/FACILITY
INMATE (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 2/05)

Incorporated by Reference in Rule 33-103.006, F.A.C.

**PART B - RESPONSE**

| DERKS, LARKIN | 849475 | 1812-231-085 | SUWANNEE C.I. ANNEX | M1103L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed & evaluated.

Investigation into your grievance reveals the following:
It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing, including specialty consults, medication prescriptions, diagnostic testing, lab work, or passes. There is no indication that you have been denied access to medical or denied medical care. You were seen in sick call on 12/11/18 to address your medical concerns. You have pending Chronic Clinic appointments coming up soon with the MD. You can address your need for special passes and specialty consults with the MD at that time. If you have further medical questions or concerns you may address them through sick call.

Based on the foregoing your grievance has been DENIED

You may obtain further administrative review of your complaint by obtaining form DC1-303. Request for Administrative Review or Appeal, Completing the form, providing attachments as required by 33-103.007(3)(a) and (b), F.A.C. and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun, Tallahassee, Fl. 32399-2500, within Fifteen(15) days from date of this response.

MAILED 1.16.19

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

F. Cruz, MD
Suwannee C.I.
SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING

F. Mock
Assistant Warden Programs
SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE

1.16.19
DATE

DR. FIGUEROA STATED PASSES would be ISSUED but NONE RECEIVED ALSO STATED he would CONTACT DR. WINTERS The orth DOCTOR but NO ACTION WAS TAKEN.

FLORIDA DEPARTMENT OF CORRECTIONS

7a
H8

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

DERKS, LARKIN L. — 849475 — SUWANNEE CI ANNEX
Last First Middle Initial — DC Number — Institution

**Part A – Inmate Grievance**

I WAS TRANSFERED TO THIS INSTITUTION THE 1ST WEEK OF DECEMBER, 2018. SINCE ARRIVING I HAVE FILLED OUT SICK-CALL REQUEST TO HAVE PASSES FROM OTHER INSTITUTIONS AND ORTHOPEDIC SPECIALISTS RECOMMENDATIONS ISSUED FROM AND FOR THIS CAMP, INCLUDING NOTIFICATION OF POST SURGICAL TRAUMA AND INJURY AS FILED AND NOTED IN GRIEVANCE FILED AT LAKE BUTLER, GRIEVANCE LOG NUMBER 1811-209-024, R.M.C. MAIN UNIT DATED 11-07-18. AS OF THIS DATE 12-21-18 I HAVE NOT BEEN SEEN BY ANYONE CONCERNING THE POST-SURGICAL TRAUMA OR ANY OTHER CHRONIC HEALTH ISSUES, NOR HAVE I RECEIVED ANY OF THE REQUIRED MEDICAL PASSES.

I AM CERTIFIED A.D.A. LISTED AS PERMANENT WHEELCHAIR AND HAVE SERIOUS MEDICAL ISSUES PERTAINING TO INJURIES AND POST-SURGICAL TRAUMA AND INJURY THAT ARE NOT BEING ADDRESSED AT THIS INSTITUTION, NOR ARE ANY OTHER OF MY OTHER INJURIES BEING ADDRESSED IE: TORN ROTATOR CUP RT. SHOULDER, HERNIATED DISC L4, L5 & L5-S1 IN BACK AS LISTED IN SUIT AGAINST CENTURION MEDICAL CASE NO. 6:18-CV-451-ORL-40TBS MIDDLE DISTRICT-FEDERAL COURT.

THESE ISSUES NEED TO BE ADDRESSED IE: PASSES ISSUED, CONSULT WITH DOCTOR CONCERNING MEDICATIONS FOR PAIN AND OTHER ISSUES, POST-SURGICAL TRAUMA, ETC. I HAVE RECEIVED NO CARE TO DATE

12-21-2018
DATE

[signature] 849475
SIGNATURE OF GRIEVANT AND D.C. #

***BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** ____ / ____
# Signature

1812-231-085

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
DEC 27 2018
Assistant Warden - Programs
Suwannee Correctional Institution

Submitted by the inmate on: ____________ (Date)

Receipt for Appeals Being Forwarded to Central Office

Institutional Mailing Log #: ____________

M. Stofel
(Received By)

SEE ATTACHED RESPONSE
1/10/19

DISTRIBUTION: INSTITUTION/FACILITY
INMATE (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

Medical

FLORIDA DEPARTMENT OF CORRECTIONS

RECEIVED
FEB 04 2019
Department of Corrections
Inmate Grievance Appeals

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☐ Warden ☐ Assistant Warden ☒ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

DERKS, LARKIN L. (Last, First, Middle Initial) — 849475 (DC Number) — SUWANNEE C.I. ANNEX (Institution)

Part A – Inmate Grievance

19-6-04972

This grievance concerns grievance log number 1812-231-085. This institution states there is no indication of denial of medical care. As stated, I declared Post-Surgical Trauma in November when it became apparent that surgery to shoulder was not healing, but getting worse. I was refused any further care for injury after receiving x-rays which did not nor could not show ligament, muscle, or cartilage damage. See grievance log number 1811-209-024 dated Nov. 7, 2018 which was sent back unprocessed stating I was mailed an answer. I never received such answer. I declared Post-Surgical Trauma upon ariving at this institution on 12-27-18 after 3 weeks of no medical care or consult for this issue. In 6 weeks here and a total of 2½ months since declaring Post-Surgical Trauma with disfigurement I have seen no doctor or anyone else concerning this issue. I was instructed at surgery what to look for and have complied with surgeons after-care instructions concerning post-surgical trauma and have been completely ignored. This needs imediate action as I am ~~los~~ losing use of my left arm and I fear permanent damage.

1-23-19
DATE

Larkin L. Derks #849475
SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ / _____
\# Signature

230-19-055

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
JAN 25 2019
ASSISTANT WARDEN-PROGRAMS
SUWANNEE CORRECTIONAL INST.

Submitted by the inmate on: _____ (Date)

Receipt for Appeals Being Forwarded to Central Office

Institutional Mailing Log #: _____

_____ (Received By)

MC 231

DISTRIBUTION: INSTITUTION/FACILITY
INMATE (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

1812-231-085

**PART B - RESPONSE**

| DERKS, LARKIN | 849475 | 2003-231-011 | SUWANNEE C.I. ANNEX | N1103L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed & evaluated.

Investigation into your grievance reveals the following:
The response to the attached informal #231-2002-0058 was correct. The response was based on the clinician notes in your medical chart. If you are having an issue with incontinence you need to access sick call where the nursing staff can evaluate your condition and if referral to see a clinician is needed they will schedule you. Review shows you have not accessed sick call since seen in your chronic illness clinic on 2/10/20. Access sick call to have your medical issues and concerns addressed.

Based on the foregoing your grievance has been DENIED.

You may obtain further administrative review of your complaint by obtaining form DC1-303. Request for Administrative Review or Appeal, Completing the form, providing attachments as required by 33-103.007(3)(a) and (b), F.A.C. and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun, Tallahassee, Fl. 32399-2500, within Fifteen(15) days from date of this response.

MAILED 3-17-20

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

F. Cruz. M. Cruz, MD
Suwannee C.I

SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING

F. MOCK
ASSISTANT WARDEN

SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE

3-16-20
DATE

DEPARTMENT OF CORRECTIONS
REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

1e
HS

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

DEEKS, LARKIN L. — 849475 — SUWANNEE ANNEX

Last, First, Middle Initial — DC Number — Institution

**Part A – Inmate Grievance**

ATTACHED IS INFORMAL GRIEVANCE NO. 231-2002-0058 THAT I SENT TO DR. FIGUEROA. IT WAS NOT ANSWERED BY DR. FIGUEROA BUT BY AN ADMINISTRATIVE ASST. WHO WAS NOT PARTY TO CONVERSATION IN WHICH I STATED RECTUM DISFUNCTION CAUSED BY LEAKAGE I EXPLAINED TO DR. FIGUEROA THAT I HAVE HAD PROBLEMS WITH THIS MEDICAL ISSUE BEFORE WHICH WAS CURED BY DIET. THIS WAS DOCUMENTED IN MEDICAL FILE (2016-17) HE STATED THAT LOW RESIDUE DIET WAS NO LONGER AVAILABLE BUT WOULD TRY TO GET MEAT INTOLERANCE DIET INSTEAD, BUT IF NOT A PASS FOR PULL-UPS WOULD BE ISSUED. THIS IS A SERIOUS MEDICAL ISSUE WHICH MUST BE ADDRESSED. I ALSO RELAYED INCONTINENCE PROBLEM AT SICK CALL TWICE BUT STATING DIET WOULD CURE PROBLEM BUT ALL THEY WANT TO TALK ABOUT IS DENIAL OF DIETS DIET WOULD SOLVE PROBLEM BUT IF NOT I STILL HAVE SERIOUS MEDICAL PROBLEM OF INCONTINANCE-RECTAL LEAKAGE FROM DIARETIC CONDITION I HAVE ASKED FOR HELP FOR FOR MONTHS.

IF YOU DO NOT WISH TO SOLVE MEDICAL PROBLEM YOU STILL MUST MAINTAIN MY MEDICAL PROBLEM AS A MATTER OF CLEANLINESS. LEAVING ME TO SIT AROUND WITH SOILED CLOTHES UNABLE TO BATH OR MANAGE PROBLEM IS A SERIOUS HEALTH VIOLATION. YOU KEEP TELLING ME TO GO TO SICKCALL WITH SAME RESULT. I WAS TOLD EVERY TIME I WOULD RECEIVE PASS FOR PULL-UPS OR DIET OR SEE DOCTOR NOTHING IS BEING DONE.

MARCH 3, 2020
DATE

[signature] 849475
SIGNATURE OF GRIEVANT AND D.C. #

***BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

2003-231-011

\# Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
MAR 04 2020
Assistant Warden - Programs
Suwannee Correctional Institution

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: ______ Institutional Mailing Log #: ______ [signature] (Received By)

DISTRIBUTION: INSTITUTION/FACILITY
INMATE (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

SEE ATTACHED RESPONSE

DC1-303 (Effective 11/13)

Incorporated by Reference in Rule 33-103.006, F.A.C.

RECEIVED FEB 25 20

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

# INMATE REQUEST

Mail Number: HS
Team Number:
Institution:

TO: (Check One)
☐ Warden MEDICAL ADMIN SUWANNEE C.I.
☐ Asst. Warden
☐ Classification
☐ Security
☒ Medical DR. FIGUEROA
☐ Mental Health
☐ Dental
☒ Other DR. FIGUEROA

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | LARKIN DERKS | 849475 | N1-103L | REST. HOUSEMAN | 2-19-20 |

**REQUEST** Check here if this is an informal grievance ☒

SIR, I SAW YOU ON 2-10-20. AT THAT TIME YOU STATED THAT YOU WOULD EITHER ISSUE LOW FAT DIET PASS OR PASS FOR PULLUPS TO CURE MY MEDICAL ISSUE OF DIARETIC LEAKAGE OR AT LEAST CONTROL IT. YOU SAID A COUPLE OF DAYS. I RECEIVED NOTHING NO WAS SICK-CALL INFORMATION REQUESTED ON FEB. 13, 2020 ANSWERED.

IS IT YOUR INTENT TO DO NOTHING ABOUT THIS CHRONIC PROBLEM.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): [signature] DC#: 849475 RECEIVED

DO NOT WRITE BELOW THIS LINE

**RESPONSE** 231-2002-0058 DATE RECEIVED: FEB 21 2020 Assistant Warden - Programs Suwannee Correctional Institution

The Low Residue diet was discussed at your 2-10-20 Chronic Clinic appointment and you were told you do not meet the requirements for a Low Res. diet, by the M.D. Seen again in sick call & reviewed by Clinician on 2/20/20 with clinician noting "Based on pass guidelines & IMP current history, He does not meet diet pass requirements/criteria. There was no mention of Pull Ups by either Clinician. You can access sick call to address any further questions or concerns.

[The following pertains to informal grievances only:

Based on the above information, your grievance is ______________. (Returned, (Denied) or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Print Name): R. CORBIN ADMINISTRATIVE ASSISTANT SUWANNEE CI 04214/04215 Official (Signature): [signature] Date: 2/27/20

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 15 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 11/18)

Incorporated by Reference in Rule 33-103.005, F.A.C.

FLORIDA DEPARTMENT OF CORRECTIONS
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED
APR 0 2 2020
Department of Corrections
Inmate Grievance Appeals

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden ☐ Assistant Warden ☒ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

| DERKS LARKIN L. | 849475 | SUWANNEE C.I. ANNEX |
|---|---|---|
| Last First Middle Initial | DC Number | Institution |

**Part A – Inmate Grievance** 20-6-11370

This is in Regards to Grievane No. 2003-231-011 and is about an incontinance Problem where I am having diaretic Rectal Leakage. I am being told I can not have diet to help control diareaha Problem and they keep stating that I should go to sick-call where I am charged co-pay and nothing is done. I was told by Dr. Figueroa that he would issue Pass for either diet or diapers or both but this was verbal and apparently he did not bother to write it down, which is consistent with Previous clinics where he has stated he would do or institute X-Rays, consults to specialist doctors or issue Passes, none of which are ever done. I have tried to Resolve this Primary issue of diareaha through sick-call several times and have brought it up to Dr. Figueroa in clinic and this issue is ignored. Grievances come back denied with answers that could not possibly be accurate unless staff is not bothering to write why I came to sick-call with only one complaint of diareha and Rectal incontinance.

I do not need denials I need medical attention for this Problem. If not diet to rectify then diaper pass or whatever. I am being left untreated and ignored, being told to keep going to sick-call where I am just brushed off.

March 24, 2020
DATE

[signature] 849475
SIGNATURE OF GRIEVANT AND D.C. #

***BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** ____ / ____
\# Signature

230-20-172

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
MAR 2 6 2020
Assistant Warden - Programs
Suwannee Correctional Institution

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: ____________ Institutional Mailing Log #: ____________ [signature] (Received By)

DISTRIBUTION:
INSTITUTION/FACILITY
INMATE (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

07A
2003-231-011

DC1-303 (Effective 11/13)

Incorporated by Reference in Rule 33-103.006, F.A.C.

NS

Case 3:20-cv-00289-BJD-PDB Document 7-1 Filed 07/23/20 Page 38 of 42 PageID 94

**456.069 Authority to inspect.**—In addition to the authority specified in s. 465.017, duly authorized agents and employees of the department shall have the power to inspect in a lawful manner at all reasonable hours:

(1) Any pharmacy; or

(2) Any establishment at which the services of a licensee authorized to prescribe controlled substances specified in chapter 893 are offered,

for the purpose of determining if any of the provisions of this chapter or any practice act of a profession or any rule adopted thereunder is being violated; or for the purpose of securing such other evidence as may be needed for prosecution.

History.—s. 86, ch. 97-261; s. 88, ch. 2000-160.
Note.—Former s. 455.681.

**456.071 Power to administer oaths, take depositions, and issue subpoenas.**—For the purpose of any investigation or proceeding conducted by the department, the department shall have the power to administer oaths, take depositions, make inspections when authorized by statute, issue subpoenas which shall be supported by affidavit, serve subpoenas and other process, and compel the attendance of witnesses and the production of books, papers, documents, and other evidence. The department shall exercise this power on its own initiative or whenever requested by a board or the probable cause panel of any board. Challenges to, and enforcement of, the subpoenas and orders shall be handled as provided in s. 120.569.

History.—s. 85, ch. 97-261; s. 89, ch. 2000-160.
Note.—Former s. 455.611.

**456.072 Grounds for discipline; penalties; enforcement.**—

(1) The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2) may be taken:

(a) Making misleading, deceptive, or fraudulent representations in or related to the practice of the licensee's profession.

(b) Intentionally violating any rule adopted by the board or the department, as appropriate.

(c) Being convicted or found guilty of, or entering a plea of guilty or nolo contendere to, regardless of adjudication, a crime in any jurisdiction which relates to the practice of, or the ability to practice, a licensee's profession.

(d) Using a Class III or a Class IV laser device or product, as defined by federal regulations, without having complied with the rules adopted under s. 501.122(2) governing the registration of the devices.

(e) Failing to comply with the educational course requirements for human immunodeficiency virus and acquired immune deficiency syndrome.

(f) Having a license or the authority to practice any regulated profession revoked, suspended, or otherwise acted against, including the denial of licensure, by the licensing authority of any jurisdiction, including its agencies or subdivisions, for a violation that would constitute a violation under Florida law. The licensing authority's acceptance of a relinquishment of licensure, stipulation, consent order, or other settlement, offered in response to or in anticipation of the filing of charges against the license, shall be construed as action against the license.

(g) Having been found liable in a civil proceeding for knowingly filing a false report or complaint with the department against another licensee.

(h) Attempting to obtain, obtaining, or renewing a license to practice a profession by bribery, by fraudulent misrepresentation, or through an error of the department or the board.

(i) Except as provided in s. 465.016, failing to report to the department any person who the licensee knows is in violation of this chapter, the chapter regulating the alleged violator, or the rules of the department or the board. However, a person who the licensee knows is unable to practice with reasonable skill and safety to patients by reason of illness or use of alcohol, drugs, narcotics, chemicals, or any other type of material, or as a result of a mental or physical condition, may be reported to a consultant operating an impaired practitioner program as described in s. 456.076 rather than to the department.

(j) Aiding, assisting, procuring, employing, or advising any unlicensed person or entity to practice a profession contrary to this chapter, the chapter regulating the profession, or the rules of the department or the board.

(k) Failing to perform any statutory or legal obligation placed upon a licensee. For purposes of this section, failing to repay a student loan issued or guaranteed by the state or the Federal Government in accordance with the terms of the loan or failing to comply with service scholarship obligations shall be considered a failure to perform a statutory or legal obligation, and the minimum disciplinary action imposed shall be a suspension of the license until new payment terms are agreed upon or the scholarship obligation is resumed, followed by probation for the duration of the student loan or remaining scholarship obligation period, and a fine equal to 10 percent of the defaulted loan amount. Fines collected shall be deposited into the Medical Quality Assurance Trust Fund.

(l) Making or filing a report which the licensee knows to be false, intentionally or negligently failing to file a report or record required by state or federal law, or willfully impeding or obstructing another person to do so. Such reports or records shall include only those that are signed in the capacity of a licensee.

(m) Making deceptive, untrue, or fraudulent representations in or related to the practice of a profession or employing a trick or scheme in or related to the practice of a profession.

(n) Exercising influence on the patient or client for the purpose of financial gain of the licensee or a third party.

(o) Practicing or offering to practice beyond the scope permitted by law or accepting and performing professional responsibilities the licensee knows, or has reason to know, the licensee is not competent to perform.

(p) Delegating or contracting for the performance of professional responsibilities by a person when the licensee delegating or contracting for performance of

facility's performance and to enhance and improve the quality of care provided to the public. The designated physician shall establish a quality assurance program that includes the following components:

1. The identification, investigation, and analysis of the frequency and causes of adverse incidents to patients.

2. The identification of trends or patterns of incidents.

3. The development of measures to correct, reduce, minimize, or eliminate the risk of adverse incidents to patients.

4. The documentation of these functions and periodic review no less than quarterly of such information by the designated physician.

(j) The designated physician is responsible for ensuring compliance with the following data collection and reporting requirements:

1. The designated physician for each pain-management clinic shall report all adverse incidents to the department as set forth in s. 458.351.

2. The designated physician shall also report to the Board of Medicine, in writing, on a quarterly basis the following data:

a. The number of new and repeat patients seen and treated at the clinic who are prescribed controlled substance medications for the treatment of chronic, nonmalignant pain.

b. The number of patients discharged due to drug abuse.

c. The number of patients discharged due to drug diversion.

d. The number of patients treated at the pain clinic whose domicile is located somewhere other than in this state. A patient's domicile is the patient's fixed or permanent home to which he or she intends to return even though he or she may temporarily reside elsewhere.

(4) INSPECTION.—

(a) The department shall inspect the pain-management clinic annually, including a review of the patient records, to ensure that it complies with this section and the rules of the Board of Medicine adopted pursuant to subsection (5) unless the clinic is accredited by a nationally recognized accrediting agency approved by the Board of Medicine.

(b) During an onsite inspection, the department shall make a reasonable attempt to discuss each violation with the owner or designated physician of the pain-management clinic before issuing a formal written notification.

(c) Any action taken to correct a violation shall be documented in writing by the owner or designated physician of the pain-management clinic and verified by followup visits by departmental personnel.

(5) RULEMAKING.—

(a) The department shall adopt rules necessary to administer the registration, exemption, and inspection of pain-management clinics which establish the specific requirements, procedures, forms, and fees.

(b) The Board of Medicine shall adopt rules setting forth training requirements for all facility health care practitioners who are not regulated by another board.

(6) PENALTIES; ENFORCEMENT.—

(a) The department may impose an administrative fine on the clinic of up to $5,000 per violation for violating the requirements of this section; chapter 499, the Florida Drug and Cosmetic Act; 21 U.S.C. ss. 301-392, the Federal Food, Drug, and Cosmetic Act; 21 U.S.C. ss. 821 et seq., the Comprehensive Drug Abuse Prevention and Control Act; chapter 893, the Florida Comprehensive Drug Abuse Prevention and Control Act; or the rules of the department. In determining whether a penalty is to be imposed, and in fixing the amount of the fine, the department shall consider the following factors:

1. The gravity of the violation, including the probability that death or serious physical or emotional harm to a patient has resulted, or could have resulted, from the pain-management clinic's actions or the actions of the physician, the severity of the action or potential harm, and the extent to which the provisions of the applicable laws or rules were violated.

2. What actions, if any, the owner or designated physician took to correct the violations.

3. Whether there were any previous violations at the pain-management clinic.

4. The financial benefits that the pain-management clinic derived from committing or continuing to commit the violation.

(b) Each day a violation continues after the date fixed for termination of the violation as ordered by the department constitutes an additional, separate, and distinct violation.

(c) The department may impose a fine and, in the case of an owner-operated pain-management clinic, revoke or deny a pain-management clinic's registration, if the clinic's designated physician knowingly and intentionally misrepresents actions taken to correct a violation.

(d) An owner or designated physician of a pain-management clinic who concurrently operates an unregistered pain-management clinic is subject to an administrative fine of $5,000 per day.

(e) If the owner of a pain-management clinic that requires registration fails to apply to register the clinic upon a change of ownership and operates the clinic under the new ownership, the owner is subject to a fine of $5,000.

**History.**—s. 4, ch. 2010-211; s. 4, ch. 2011-141; s. 32, ch. 2012-160; s. 7, ch. 2015-34; s. 1, ch. 2015-49; s. 55, ch. 2016-10; s. 18, ch. 2016-105; s. 7, ch. 2016-224; s. 5, ch. 2016-231; s. 4, ch. 2018-13; s. 49, ch. 2018-106; s. 5, ch. 2019-112.

**458.327 Penalty for violations.**—

(1) Each of the following acts constitutes a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084:

(a) The practice of medicine or an attempt to practice medicine without a license to practice in Florida.

(b) The use or attempted use of a license which is suspended or revoked to practice medicine.

(c) Attempting to obtain or obtaining a license to practice medicine by knowing misrepresentation.

(d) Attempting to obtain or obtaining a position as a medical practitioner or medical resident in a clinic or

hospital through knowing misrepresentation of education, training, or experience.

(e) Knowingly operating, owning, or managing a nonregistered pain-management clinic that is required to be registered with the Department of Health pursuant to s. 458.3265(1).

(f) Dispensing a controlled substance listed in Schedule II or Schedule III in violation of s. 465.0276.

(2) Each of the following acts constitutes a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083:

(a) Knowingly concealing information relating to violations of this chapter.

(b) Making any willfully false oath or affirmation whenever an oath or affirmation is required by this chapter.

(c) Referring any patient, for health care goods or services, to a partnership, firm, corporation, or other business entity in which the physician or the physician's employer has an equity interest of 10 percent or more unless, prior to such referral, the physician notifies the patient of his or her financial interest and of the patient's right to obtain such goods or services at the location of the patient's choice. This section does not apply to the following types of equity interest:

1. The ownership of registered securities issued by a publicly held corporation or the ownership of securities issued by a publicly held corporation, the shares of which are traded on a national exchange or the over-the-counter market;

2. A physician's own practice, whether he or she is a sole practitioner or part of a group, when the health care good or service is prescribed or provided solely for the physician's own patients and is provided or performed by the physician or under the physician's supervision; or

3. An interest in real property resulting in a landlord-tenant relationship between the physician and the entity in which the equity interest is held, unless the rent is determined, in whole or in part, by the business volume or profitability of the tenant or is otherwise unrelated to fair market value.

(d) Leading the public to believe that one is licensed as a medical doctor, or is engaged in the licensed practice of medicine, without holding a valid, active license.

(e) Practicing medicine or attempting to practice medicine with an inactive or delinquent license.

(f) Knowingly prescribing or dispensing, or causing to be prescribed or dispensed, controlled substances in a nonregistered pain-management clinic that is required to be registered with the Department of Health pursuant to s. 458.3265(1).

History.—ss. 1, 8, ch. 79-302; ss. 2, 3, ch. 81-318; s. 32, ch. 85-175; ss. 17, 25, 26, ch. 86-245; s. 23, ch. 88-1; s. 86, ch. 91-224; s. 4, ch. 91-429; s. 81, ch. 92-149; s. 165, ch. 94-119; s. 209, ch. 97-103; s. 48, ch. 2000-318; s. 5, ch. 2010-211; s. 5, ch. 2011-141.

**458.328 Office surgeries.—**

(1) REGISTRATION.—

(a) An office in which a physician performs a liposuction procedure in which more than 1,000 cubic centimeters of supernatant fat is removed, a Level II office surgery, or a Level III office surgery must register with the department unless the office is licensed as a facility under chapter 390 or chapter 395.

(b) By January 1, 2020, each office registered under this section or s. 459.0138 must designate a physician who is responsible for the office's compliance with the office health and safety requirements of this section and rules adopted hereunder. A designated physician must have a full, active, and unencumbered license under this chapter or chapter 459 and shall practice at the office for which he or she has assumed responsibility. Within 10 calendar days after the termination of a designated physician relationship, the office must notify the department of the designation of another physician to serve as the designated physician. The department may suspend the registration of an office if the office fails to comply with the requirements of this paragraph.

(c) As a condition of registration, each office must establish financial responsibility by demonstrating that it has met and continues to maintain, at a minimum, the same requirements applicable to physicians in ss. 458.320 and 459.0085. Each physician practicing at an office registered under this section or s. 459.0138 must meet the financial responsibility requirements under s. 458.320 or s. 459.0085, as applicable.

(d) Each physician practicing at an office registered under this section or s. 459.0138 shall advise the board, in writing, within 10 calendar days after beginning or ending his or her practice at a registered office.

(e) The department shall inspect a registered office at least annually, including a review of patient records, to ensure that the office is in compliance with this section and rules adopted hereunder unless the office is accredited by a nationally recognized accrediting agency approved by the board. The inspection may be unannounced, except for the inspection of an office that meets the description of a clinic specified in s. 458.3265(1)(a)3.h., and those wholly owned and operated physician offices described in s. 458.3265(1)(a)3.g. which perform procedures referenced in s. 458.3265(1)(a)3.h., which must be announced.

(f) The department may suspend or revoke the registration of an office in which a procedure or surgery identified in paragraph (a) is performed for failure of any of its physicians, owners, or operators to comply with this section and rules adopted hereunder or s. 459.0138 and rules adopted thereunder. If an office's registration is revoked for any reason, the department may deny any person named in the registration documents of the office, including the persons who own or operate the office, individually or as part of a group, from registering an office to perform procedures or office surgeries pursuant to this section or s. 459.0138 for 5 years after the revocation date.

(g) The department may impose any penalty set forth in s. 456.072(2) against the designated physician for failure of the office to operate in compliance with the office health and safety requirements of this section and rules adopted hereunder or s. 459.0138 and rules adopted thereunder.

(h) A physician may only perform a procedure or surgery identified in paragraph (a) in an office that is registered with the department. The board shall impose

Case 3:20-cv-00289-BJD-PDB Document 7-1 Filed 07/23/20 Page 41 of 42 PageID 97

...of $5,000 per day on a physician who performs a ...edure or surgery in an office that is not registered ...the department.

... The actual costs of registration and inspection or ...editation shall be paid by the person seeking to ...ster and operate the office in which a procedure or ...gery identified in paragraph (a) will be performed.

... RULEMAKING.—

... The board shall adopt by rule standards of ...tice for physicians who perform procedures or ... surgeries pursuant to this section.

... The board may adopt rules to administer the ...tration, inspection, and safety of offices in which a ...sician performs procedures or office surgeries ...uant to this section.

...y.—s. 3, ch. 2019-130.

**...329 Sexual misconduct in the practice of ...icine.**—The physician-patient relationship is ...ded on mutual trust. Sexual misconduct in the ...ice of medicine means violation of the physician-...ent relationship through which the physician uses ... relationship to induce or attempt to induce the ...t to engage, or to engage or attempt to engage the ...ent, in sexual activity outside the scope of the ...ice or the scope of generally accepted examination ...eatment of the patient. Sexual misconduct in the ...ice of medicine is prohibited.

...y.—ss. 1, 8, ch. 79-302; s. 296, ch. 81-259; ss. 2, 3, ch. 81-318; ss. 25, 26, ...245; s. 4, ch. 91-429.

**...3295 Concerted effort to refuse emergency ... treatment to patients; penalties.—**

... A physician licensed pursuant to this chapter ...not instigate or engage in a concerted effort to ... or get physicians to refuse to render services to a ...ent or patients in a hospital emergency room by ...ing to report for duty, absenting themselves from ...positions, submitting their resignations, abstaining ...the full and faithful performance of their medical ..., or otherwise causing conduct that adversely ... the services of the hospital. For the purposes of ...subsection, the term "concerted" means contrived ...nged by agreement, planned or devised together, ...e or performed together in cooperation.

... If a physician or group of physicians engages in ...uct in violation of subsection (1), either the ...rtment or the hospital where the conduct occurs ...file suit in circuit court to enjoin such conduct.

... Upon such suit being filed, the court shall ...uct a hearing, with notice to the department, the ... and all interested parties, at the earliest practic-...ime. If the plaintiff makes a showing that a violation ...section (1) is in progress or that there is a clear, ...nd present danger that such a violation is about to ...mence, the court shall issue a temporary injunction ...ing such violation. Upon final hearing, the court ...either make the injunction permanent or dissolve it.

... A physician found to be in contempt of court for ...ing such an injunction shall be fined an amount ...ered appropriate by the court, but not less than ... In determining the appropriate fine, the court ...objectively consider the extent of services lost to ...spital and its patients.

(3) A violation by a physician of subsection (1) constitutes ground for disciplinary action against him or her by the board, including the suspension or revocation of the physician's license, and subjects him or her to liability for any damages that the hospital or any patient therein sustains as a result of the violation.

History.—s. 24, ch. 88-1; s. 9, ch. 88-277; s. 1, ch. 89-296; s. 4, ch. 91-429; s. 210, ch. 97-103.

**458.331 Grounds for disciplinary action; action by the board and department.—**

(1) The following acts constitute grounds for denial of a license or disciplinary action, as specified in s. 456.072(2):

(a) Attempting to obtain, obtaining, or renewing a license to practice medicine by bribery, by fraudulent misrepresentations, or through an error of the department or the board.

(b) Having a license or the authority to practice medicine revoked, suspended, or otherwise acted against, including the denial of licensure, by the licensing authority of any jurisdiction, including its agencies or subdivisions. The licensing authority's acceptance of a physician's relinquishment of a license, stipulation, consent order, or other settlement, offered in response to or in anticipation of the filing of administrative charges against the physician's license, shall be construed as action against the physician's license.

(c) Being convicted or found guilty of, or entering a plea of nolo contendere to, regardless of adjudication, a crime in any jurisdiction which directly relates to the practice of medicine or to the ability to practice medicine.

(d) False, deceptive, or misleading advertising.

(e) Failing to report to the department any person who the licensee knows is in violation of this chapter or of the rules of the department or the board. However, a person who the licensee knows is unable to practice medicine with reasonable skill and safety to patients by reason of illness or use of alcohol, drugs, narcotics, chemicals, or any other type of material, or as a result of a mental or physical condition, may be reported to a consultant operating an impaired practitioner program as described in s. 456.076 rather than to the department.

(f) Aiding, assisting, procuring, or advising any unlicensed person to practice medicine contrary to this chapter or to a rule of the department or the board.

(g) Failing to perform any statutory or legal obligation placed upon a licensed physician.

(h) Making or filing a report which the licensee knows to be false, intentionally or negligently failing to file a report or record required by state or federal law, willfully impeding or obstructing such filing or inducing another person to do so. Such reports or records shall include only those which are signed in the capacity as a licensed physician.

(i) Paying or receiving any commission, bonus, kickback, or rebate, or engaging in any split-fee arrangement in any form whatsoever with a physician, organization, agency, or person, either directly or indirectly, for patients referred to providers of health care goods and services, including, but not limited to, hospitals, nursing homes, clinical laboratories,

ambulatory surgical centers, or pharmacies. The provisions of this paragraph shall not be construed to prevent a physician from receiving a fee for professional consultation services.

(j) Exercising influence within a patient-physician relationship for purposes of engaging a patient in sexual activity. A patient shall be presumed to be incapable of giving free, full, and informed consent to sexual activity with his or her physician.

(k) Making deceptive, untrue, or fraudulent representations in or related to the practice of medicine or employing a trick or scheme in the practice of medicine.

(l) Soliciting patients, either personally or through an agent, through the use of fraud, intimidation, undue influence, or a form of overreaching or vexatious conduct. A solicitation is any communication which directly or implicitly requests an immediate oral response from the recipient.

(m) Failing to keep legible, as defined by department rule in consultation with the board, medical records that identify the licensed physician or the physician extender and supervising physician by name and professional title who is or are responsible for rendering, ordering, supervising, or billing for each diagnostic or treatment procedure and that justify the course of treatment of the patient, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.

(n) Exercising influence on the patient or client in such a manner as to exploit the patient or client for financial gain of the licensee or of a third party, which shall include, but not be limited to, the promoting or selling of services, goods, appliances, or drugs.

(o) Promoting or advertising on any prescription form of a community pharmacy unless the form shall also state "This prescription may be filled at any pharmacy of your choice."

(p) Performing professional services which have not been duly authorized by the patient or client, or his or her legal representative, except as provided in s. 743.064, s. 766.103, or s. 768.13.

(q) Prescribing, dispensing, administering, mixing, or otherwise preparing a legend drug, including any controlled substance, other than in the course of the physician's professional practice. For the purposes of this paragraph, it shall be legally presumed that prescribing, dispensing, administering, mixing, or otherwise preparing legend drugs, including all controlled substances, inappropriately or in excessive or inappropriate quantities is not in the best interest of the patient and is not in the course of the physician's professional practice, without regard to his or her intent.

(r) Prescribing, dispensing, or administering any medicinal drug appearing on any schedule set forth in chapter 893 by the physician to himself or herself, except one prescribed, dispensed, or administered to the physician by another practitioner authorized to prescribe, dispense, or administer medicinal drugs.

(s) Being unable to practice medicine with reasonable skill and safety to patients by reason of illness or use of alcohol, drugs, narcotics, chemicals, or any other type of material or as a result of any mental or physical condition. In enforcing this paragraph, the department shall have, upon a finding of the State Surgeon General or the State Surgeon General's designee that probable cause exists to believe that the licensee is unable to practice medicine because of the reasons stated in this paragraph, the authority to issue an order to compel a licensee to submit to a mental or physical examination by physicians designated by the department. If the licensee refuses to comply with such order, the department's order directing such examination may be enforced by filing a petition for enforcement in the circuit court where the licensee resides or does business. The licensee against whom the petition is filed may not be named or identified by initials in any public court records or documents, and the proceedings shall be closed to the public. The department shall be entitled to the summary procedure provided in s. 51.011. A licensee or certificateholder affected under this paragraph shall at reasonable intervals be afforded an opportunity to demonstrate that he or she can resume the competent practice of medicine with reasonable skill and safety to patients.

(t) Notwithstanding s. 456.072(2) but as specified in s. 456.50(2):

1. Committing medical malpractice as defined in s. 456.50. The board shall give great weight to the provisions of s. 766.102 when enforcing this paragraph. Medical malpractice shall not be construed to require more than one instance, event, or act.

2. Committing gross medical malpractice.

3. Committing repeated medical malpractice as defined in s. 456.50. A person found by the board to have committed repeated medical malpractice based on s. 456.50 may not be licensed or continue to be licensed by this state to provide health care services as a medical doctor in this state.

Nothing in this paragraph shall be construed to require that a physician be incompetent to practice medicine in order to be disciplined pursuant to this paragraph. A recommended order by an administrative law judge or a final order of the board finding a violation under this paragraph shall specify whether the licensee was found to have committed "gross medical malpractice," "repeated medical malpractice," or "medical malpractice," or any combination thereof, and any publication by the board must so specify.

(u) Performing any procedure or prescribing any therapy which, by the prevailing standards of medical practice in the community, would constitute experimentation on a human subject, without first obtaining full, informed, and written consent.

(v) Practicing or offering to practice beyond the scope permitted by law or accepting and performing professional responsibilities which the licensee knows or has reason to know that he or she is not competent to perform. The board may establish by rule standards of practice and standards of care for particular practice settings, including, but not limited to, education and training, equipment and supplies, medications including anesthetics, assistance of and delegation to other personnel, transfer agreements, sterilization, records,