# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LARKIN L. DERKS,

      Plaintiff,

v.                                  Case No.  3:20-cv-289-BJD-PDB

CENTURION MEDICAL, et al.,

      Defendants.

_____

## <u>ORDER</u>

### I. Status

Plaintiff, Larkin L. Derks, an inmate in the custody of the Florida Department of Corrections, initiated this action by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. He is proceeding on an Amended Complaint (Docs. 7 and 7-1).[1] As Defendants, Plaintiff sues Centurion Medical, Dr. Alexis Figueroa, Dr. Bassa, and Dr. Cruz. Doc. 7 at 2-3. He alleges that Defendants have failed to provide adequate medical care following a surgical procedure and seeks injunctive relief and monetary damages. Id. at 10.

---

[1] Plaintiff's claims and allegations are set out in Doc. 7-1, which Plaintiff has filed as an exhibit to Doc. 7. As such, Docs. 7 and 7-1 are collectively referred to as the Amended Complaint, and the Court will cite each respective Doc. when necessary.

Each Defendant has moved to dismiss. <u>See</u> Doc. 19 (Bassa Motion); Doc. 20 (Cruz Motion); Doc. 21 (Figueroa Motion); Doc. 22 (Centurion Motion). Plaintiff filed responses opposing the Motions. <u>See</u> Doc. 26 (Bassa Resp.); Doc. 27 (Cruz Resp.); Doc. 29 (Centurion Resp.); Doc. 30 (Figueroa Resp.). Defendants' Motions are ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations in the complaint as true. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Randall v. Scott</u>, 610 F.3d 701, 705 (11th Cir. 2010). But the plaintiff must still meet minimal pleading requirements. <u>Jackson v. Bellsouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). While "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Plaintiff's Allegations

In his Amended Complaint, Plaintiff alleges that in 2008, before his incarceration, he was in a severe automobile accident resulting in injuries to his shoulders and back.[2] Doc. 7-1 at 6, 7. He asserts that following the accident, he was treated by orthopedic specialists who recommended surgery. Id. He states he was waiting approval for funds to have the surgery when he entered

---

[2] According to the Florida Department of Corrections' (FDOC) website, Plaintiff entered FDOC custody on November 4, 2009.

prison. Id. Plaintiff admits that before filing this action, he filed two other actions "concerning the same injuries with different facts and respondents." See id. at 9-10; see also Derks v. Corizon, No. 5:15-cv-51-MW-GRJ (N.D. Fla.); Derks v. Centurion, No. 6:18-cv-451-PGB-EJK (M.D. Fla.). Here, Plaintiff sues Defendants for denial of medical care from August 31, 2018 to the present, while housed at Suwannee Correctional Institution (Suwannee C.I.) and the Reception and Medical Center (R.M.C.). Doc. 7 at 5.

Although not a picture of clarity, a review of the Amended Complaint's exhibits appear to show that on August 31, 2018, Plaintiff underwent left shoulder surgery at R.M.C. to repair a "[m]assive tear of rotator cuff with significant impingement, changes of acromioclavicular joint region, tear of the long head of the biceps and some tearing of the labrum." Doc. 7-1 at 11. Plaintiff alleges that following that surgery, Defendants refused to follow specialist doctors' recommendations and instructions for continued treatment and physical therapy, which caused him pain, loss of mobility, and permanent damage. Id. at 6.

Plaintiff alleges that Defendant Bassa is the medical director of outpatient services at R.M.C. Doc. 7 at 3. According to Plaintiff, after he had surgery and while still housed at R.M.C., Bassa "refused to follow orthopedic specialist doctor's order for post-surgical care for immobilization of left shoulder for 6 weeks following surgery." Doc. 7-1 at 3. He alleges that Bassa

instead forced Plaintiff to begin physical therapy two weeks after surgery, which was premature and in contravention of the specialist doctors' orders. Id. He claims that Bassa refused to conduct a thirty-day follow-up despite Plaintiff suffering post-surgical trauma from the forced premature physical therapy; Bassa refused to follow post-surgical protocol; and Bassa cleared Plaintiff for medical release back to Suwannee C.I. without having an orthopedic doctor consult with Plaintiff per hospital instructions. Id. Instead, according to Plaintiff, Dr. Anandjiwala, who is allegedly no longer licensed to practice in the State of Florida and who was working under Bassa's supervision, was the only individual to evaluate Plaintiff prior to his discharge, and after conducting an x-ray revealing proper bone alignment, suggested that Plaintiff did not need to consult with an orthopedic specialist. Id. Plaintiff asserts that "Bassa, in his capacity [as] head physician and medical director knew or should have known that Plaintiff's injury" would not show up on an x-ray and Bassa was deliberately indifferent in failing to follow specialist recommendations and hospital policy. Id. at 8.

Plaintiff states that following Bassa's treatment at R.M.C., he was transferred to Suwannee C.I. He states that Defendant Figueroa is a physician at Suwannee C.I. and is responsible for the medical care that prisoners receive at that institution. Id. at 6-7. Plaintiff argues Figueroa wholly refused to treat Plaintiff for his post-surgical trauma pursuant to the specialist surgeon's

instructions. Id. at 7. He alleges that specialist doctors at R.M.C. had issued medical passes, but when Plaintiff arrived at Suwannee C.I., Figueroa refused to acknowledge or continue the medical passes, "with no examination, no consult, stating these medically needy passes were not permitted at this institution according to policy . . . ." Id. Plaintiff also asserts that Figueroa believed Plaintiff had a fractured elbow and recommended that he receive an x-ray, but Figueroa failed to conduct the x-ray or follow up with the elbow injury despite Plaintiff's sick-call requests. Id. Plaintiff also states that Figueroa has not seen or treated Plaintiff for injuries to his right shoulder or serious back injury despite orthopedic and neurological specialist recommendations. Id.

Plaintiff asserts that Cruz is the medical director at Suwannee C.I. and is responsible for "dictat[ing] policy of medical care and as such[,] it was his responsibility to ensure that complications of post-surgical nature were properly addressed." Id. at 9. Plaintiff argues that Cruz denied Plaintiff post-surgery medical care in violation of the hospital and orthopedic surgeon's instructions, and he failed to instruct Figueroa to examine or provide a treatment plan for Plaintiff. Id. at 9. According to Plaintiff, Cruz is supposed to ensure that all medical passes issued by specialist doctors are honored at Suwannee C.I. and that Cruz "has either instituted [a] policy to deny specialist doctors['] medical passes or has allowed institution personnel to dictate policy

of refusing specialist doctors' [] order and prescriptions for treatment." Id. Plaintiff argues that Cruz was made aware of Plaintiff's need for medical care through the grievance procedure and Cruz acted deliberately indifferent to Plaintiff's pain and suffering by failing to correct or properly monitor Plaintiff's treatment upon being notified. Id. at 4.

Finally, Plaintiff argues that Defendant Centurion contracts with the FDOC to provide medical care to all FDOC prisoners. Id. at 1. According to Plaintiff, "to negate financial costs," Centurion has a policy of refusing to follow specialist doctors' recommendations or treatment regimens. Id. He contends that Defendants Figueroa, Bassa, and Cruz are employees of Centurion and are "complicit in [the] failure to give proper care or are demonstrative of the deliberate indifference" shown to Plaintiff's serious medical need. According to Plaintiff, Defendants have refused to follow specialists' recommendations for various forms of medical care. Id. He argues that because of Defendants' prolonged denial of medical care, Plaintiff will need more painful and extensive procedures to correct the post-surgical damage and now suffers from increased pain and permanent disability. Id. at 5. He contends that he is confined to a wheelchair and requires an assistant to help him because basic tasks are increasingly painful. Id.

Plaintiff raises these claims against all Defendants: (1) discrimination and a failure to accommodate disabilities under the Americans with

Disabilities Act (ADA) and the Rehabilitation Act (RA); (2) deliberate indifference to serious medical needs in violation of the Eighth Amendment; and (3) disparate treatment and discrimination under the Equal Protection Clause of the Fourteenth Amendment. Doc. 7 at 3. Plaintiff sues all Defendants in their individual and official capacities. Id. at 3.

## IV. Summary of Defendants' Arguments

Defendant Bassa argues that: Plaintiff fails to state a claim against him under the ADA, RA, and the Fourteenth Amendment; Plaintiff failed to exhaust his administrative remedies; Plaintiff's claim for injunctive relief should be dismissed; Plaintiff's claim for monetary damages is barred under the PLRA's physical injury requirement; Plaintiff has failed to state a claim against him under the Eighth Amendment; and he is entitled to qualified immunity. See generally Bassa Motion. Defendant Cruz argues that Plaintiff's ADA, RA, and Fourteenth Amendment claims must be dismissed with prejudice; Plaintiff failed to exhaust his administrative remedies; Plaintiff's claim for injunctive relief must be dismissed with prejudice; and Plaintiff has failed to allege an Eighth Amendment claim against him. See generally Cruz Motion. Defendant Figueroa argues that Plaintiff fails to state a claim against him under the ADA, RA, and the Fourteenth Amendment; Plaintiff's claim that Figueroa violated various Florida Statutes should be dismissed with prejudice; Plaintiff failed to exhaust his administrative remedies before filing suit;

Plaintiff's claim for injunctive relief must be dismissed with prejudice; Plaintiff fails to allege an Eighth Amendment violation; and Figueroa is entitled to qualified immunity. See generally Figueroa Motion. Finally, Defendant Centurion argues that Plaintiff has failed to state a cause of action against "'Centurion Medical LLC' because no such legal entity exists"; Plaintiff's claims under the ADA, RA, and the Fourteenth Amendment are subject to dismissal; Plaintiff failed to exhaust his administrative remedies; Plaintiff's claim for injunctive relief is subject to dismissal with prejudice; Plaintiff's claim for compensatory and punitive damages is barred by § 1997e(e); and Plaintiff has failed to state an Eighth Amendment claim. See generally Centurion Motion.

## IV. Analysis

The Court begins its analysis by addressing the sufficiency of Plaintiff's claims against Defendants. Because the Court finds that Plaintiff fails to state a plausible claim for which relief may be sought against Bassa, Centurion, and Cruz, the Court declines to address the other arguments that those Defendants make in their Motions. Further, because the Court finds that Plaintiff has stated a plausible claim for relief against Figueroa under the Eighth Amendment, that claim will proceed.

### ADA & RA

All Defendants argue that Plaintiff fails to state a claim upon which relief may be granted under the ADA and RA. See Bassa Motion at 6-7;

Figueroa Motion at 6-7; Centurion Motion at 6; Cruz Motion at 6-7. Title II of the ADA, provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. See also Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998) (holding Title II of the ADA "unambiguously extends to state prison inmates"). "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). Similarly, section 504 of the RA provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." Badillo v. Thorpe, 158 F. App'x 208, 214 (11th Cir. 2005) (citing Cash v. Smith, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000)); J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ., 877 F.3d 979, 985 (11th Cir. 2017) ("Discrimination claims under the ADA and the [RA] are governed by the same standards, and the two claims are generally discussed together."). To state a claim of discrimination under the ADA and RA, a

plaintiff must allege "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477 (11th Cir. 2015) (quoting Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)).

Because only public entities may be liable under the ADA and RA, Plaintiff fails to state a claim against Defendants in their individual capacities. See, e.g., Owens, 602 F. App'x at 477, 478; Badillo v. Thorpe, 158 F. App'x at 211 ("[T]here is no individual capacity liability under Title II of the ADA or RA."). Thus, Defendants' Motions are granted to the extent that Plaintiff raises any claims under the ADA and RA against Defendants in their individual capacities.

Plaintiff also fails to sufficiently allege an ADA or RA claim against Defendants in their official capacities. Assuming Plaintiff is a qualified individual with a disability, Plaintiff identifies no program or service to which he was denied access because of post-surgical pain and injuries. See generally Docs. 7, 7-1. Rather, Plaintiff premises his ADA and RA claims on a perceived refusal to honor special medical passes or follow treatment recommended by specialty doctors because of a policy or custom to "alleviate costs." Cruz Resp.

11

at 2; Figueroa Resp. at 3; Centurion Resp. at 2; Doc. 7-1 at 1. The ADA and RA were not intended to subsume medical malpractice claims, meaning allegations that a defendant failed to provide medical care to a disabled inmate does not give rise to claims under the ADA or RA. See Jones v. Rutherford, 546 F. App'x 808, 811-12 (11th Cir. 2013); Finn v. Haddock, 459 F. App'x 833, 837-38 (11th Cir. 2012) (stating that "failure to provide adequate medical treatment . . . does not violate the ADA or [RA]" (citations omitted)). Plaintiff's allegations more squarely sound in a claim for a denial of adequate medical care under the Eighth Amendment rather than for a failure to accommodate. Thus, Plaintiff's ADA and RA claims against Defendants in their official capacities are due to be dismissed.

## Fourteenth Amendment

All Defendants argue that Plaintiff fails to state an equal protection claim under the Fourteenth Amendment. See Bassa Motion at 8; Cruz Motion at 8-9; Figueroa Motion at 7-8; Centurion Motion at 7-8. In his Responses, Plaintiff appears to argue that he has stated an equal protection claim as Defendants have refused to provide him with prescribed treatment because he is a prisoner and they have a cost-saving policy to deny medical treatment to inmates. Bassa Resp. at 4; Figueroa Resp. at 3-4; Cruz Resp. at 3; Centurion Resp. at 4-5.

To state an equal protection claim, a prisoner must show that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment stemmed from a suspect classification such as race or national origin, or it impinged on a fundamental right. Arthur v. Thomas, 674 F.3d 1257, 1262 (11th Cir. 2012); Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001).

Plaintiff fails to allege that other similarly situated prisoners received more favorable treatment than him. See generally Docs. 7, 7-1. Indeed, Plaintiff's own allegation that Defendants have a cost-saving "custom, policy, and practice" of denying specialty medical treatment to prisoners contradicts his claim that he was treated differently than other similarly situated individuals (i.e., prisoners). Plaintiff also does not allege discriminatory treatment based on any constitutionally protected interest such as race. His status as a prisoner serves as the only alleged ground for any differential treatment. But Plaintiff's status as a prisoner alone does not equal a suspect classification warranting a heightened constitutional protection. See Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1319 (11th Cir. 2006) (holding that differential treatment did not support an equal protection claim absent any evidence of invidious discrimination based on a protected characteristic); Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003) (citing Rivera v. Allin, 144 F.3d 719, 727 (11th Cir. 1998)) ("As prisoners are

not a suspect class, heightened scrutiny is not warranted on that basis."). As such, Plaintiff's equal protection claims against all Defendants are due to be dismissed.

## Eighth Amendment

All Defendants argue that Plaintiff fails to state a plausible deliberate indifference claim against them. See Bassa Motion at 18-22; Cruz Motion at 17-24; Figueroa Motion at 19-23; Centurion Motion at 18. Plaintiff's claims of deliberate indifference to a serious medical need arise under the Eighth Amendment. See Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh Circuit has explained that

> To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original).

> The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotation omitted).

<u>Easley v. Dep't of Corr.</u>, 590 F. App'x 860, 868 (11th Cir. 2014); <u>see also</u> <u>Patel v. Lanier Cnty. Ga.</u>, 969 F.3d 1173, 1188-89 & n.10 (11th Cir. 2020) (recognizing "a tension within [Eleventh Circuit] precedent regarding the minimum standard for culpability under the deliberate-indifference standard," as some cases have used "more than <u>gross</u> negligence" while others have used "more than <u>mere</u> negligence"; finding, however, that it may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as <u>reckless</u> won't meet the Supreme Court's standard" (citations omitted)).

"For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Nimmons v. Aviles</u>, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir.1991)); <u>see also</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem).

The law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has stated that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

### a. Centurion

Centurion makes two arguments relevant to the Court's analysis here. First, Centurion argues that all Plaintiff's claims against it should be dismissed because Plaintiff used the wrong name when naming Centurion as a Defendant in this case. Centurion Motion at 5. Specifically, it contends that "'Centurion Medical LLC' is neither a person nor a proper party for purposes of suit upon which a valid judgment could be entered for or against." Id. Second, it argues that to the extent Centurion is an entity subject to suit, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against it. See id. at 18. To support that argument, Centurion argues Plaintiff fails to show a causal connection between Centurion's alleged actions and Plaintiff's injuries. Id.

In his Response, Plaintiff argues Centurion is a proper entity subject to suit because it contracts with the FDOC to provide medical care to all inmates. Centurion Resp. at 1. Plaintiff also asserts that he alleges an Eighth Amendment claim against Centurion because he states it has a policy or custom of refusing recommended specialist doctors' prescriptions for treatment for non-medical reasons. Id. at 10.

As to Centurion's first argument, the Court notes that in his Amended Complaint, Plaintiff did misstate Centurion's legal name as "Centurion Medical, LLC." Doc. 7 at 1. However, the Court finds this error inconsequential

as Centurion of Florida, LLC, accepted service of process, counsel filed a notice of appearance on behalf of Centurion and filed a motion to dismiss in response to the Amended Complaint. <u>See</u> Doc. 15; Centurion Motion. As such, Centurion's request to dismiss based on this error is denied.

Further, although Centurion is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of § 1983. <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Because Centurion contracts with the FDOC to provide medical services to state inmates, it is subject to suit under § 1983. However, where a deliberate indifference medical claim is brought against an entity, such as Centurion, based on its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in Plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot stem from the theory of respondeat superior. <u>Craig v. Floyd Cnty., Ga.</u>, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting <u>Grech v. Clayton Cnty., Ga.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003)); <u>see</u> <u>Denno v. Sch. Bd. of Volusia Cnty.</u>, 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." <u>Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.</u>, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted).

Thus, like claims against a county, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

Because Centurion's liability under § 1983 would stem from its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Plaintiff must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged federal constitutional violation. In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must allege that the constitutional deprivation resulted from "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating Monell "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" <u>Grech</u>, 335 F.3d at 1329 n.5 (quotation and citation omitted). Governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989) (quoting <u>Pembaur</u>, 475 U.S. at 483-84). A government entity rarely will have an officially adopted policy that permits a particular constitutional violation, therefore, to state a cause of action for damages under § 1983, most plaintiffs must show that the government entity has a custom or practice of permitting the violation. <u>See</u> <u>Grech</u>, 335 F.3d at 1330; <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." <u>Sewell</u>, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its]

policy or custom and the alleged constitutional deprivation.'" <u>Snow ex rel. Snow</u> <u>v. City of Citronelle</u>, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

Plaintiff alleges that Centurion has a "policy" or "custom" of refusing to follow specialist doctors' treatment regimens following surgery to "negate financial costs." Doc. 7-1 at 1. In his Response, he argues that evidence of Centurion's cost-saving policy is clear because "there could be no medical reason not to follow board certified specialist doctors' recommendations for treatment otherwise." Centurion Resp. at 10. He also alleges that Centurion's practice of refusing specialist doctor's recommendations "is a widespread practice throughout Centurion's entire personnel structure as is seen in Plaintiff's medical history . . . ." <u>Id.</u> at 11-12.

Upon review, however, reading these allegations in concert with Plaintiff's allegations against the other Defendants does not show such a "widespread policy." Indeed, Plaintiff alleges that Bassa followed specialist's physical therapy recommendation, but he made Plaintiff begin exercises too soon. Further, Plaintiff's allegations regarding Figueroa and Cruz are not solely based on their alleged failure to follow specialist doctor's recommendations. Rather, he states those Defendants have essentially denied all medical care, including refusing to treat an elbow injury unrelated to the surgery for which a specialist doctor would have been involved.

Centurion cannot be held liable based on any alleged conduct of or decisions by its employees simply because they were working under contract for Centurion to provide medical care to inmates. Plaintiff's factual allegations relating solely to alleged individual failures in his medical care simply cannot sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying adequate medical care, much less that the practice was so widespread that Centurion had notice of violations and made a "conscious choice" to disregard them. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). Thus, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Centurion.[3]

### b. Bassa

Bassa does not dispute that Plaintiff's post-surgical condition at R.M.C. constituted an objectively serious medical need, nor does he dispute he knew about Plaintiff's need for post-surgical care. Bassa Motion at 18-22. Instead, Bassa argues that Plaintiff fails to allege that he was deliberately indifferent to Plaintiff's need for medical care by conduct that was more than mere negligence. Id. According to Bassa, Plaintiff acknowledges that Bassa ordered Plaintiff to conduct physical therapy following his shoulder surgery and that he ensured Plaintiff was medically cleared before his transfer back to

---

[3] Because the Court finds Plaintiff has stated no claim for relief against Centurion, it need not address Centurion's remaining arguments for dismissal.

Suwannee C.I. Id. at 21. Bassa argues that Plaintiff appears to merely disagree with Bassa's medical judgment and contends Bassa should have started Plaintiff's physical therapy six weeks after surgery instead of just two weeks after, and he should have ordered a subsequent orthopedic consultation to medically clear Plaintiff rather than having Dr. Anandjiwala conduct the evaluation. Id. Bassa further contends that Plaintiff also appears to disagree with Bassa's decision to order only an x-ray before determining Plaintiff's discharge, because Bassa should have known the x-ray would show no abnormalities. Despite Plaintiff's disapproval, Bassa maintains that Plaintiff was sufficiently treated at R.M.C. following his surgery and Plaintiff's disagreement with Bassa's medical decisions on how to treat him does not support a claim of deliberate indifference. Id.

Accepting all of Plaintiff's factual allegations as true, the Court finds that Plaintiff fails to state a claim of deliberate indifference related to Bassa's post-surgical care at R.M.C. Plaintiff alleges that the specialist doctor recommended physical therapy and that Bassa then ordered Plaintiff to undergo physical therapy. While Plaintiff argues that Bassa made Plaintiff start the treatment too early, Plaintiff does not allege that Bassa knew that ordering the early physical therapy amounted to a "risk of serious harm." Likewise, while Plaintiff alleges that Bassa should have known that his injuries would not appear on an x-ray and thus an x-ray should not have been

used to approve his transfer, Plaintiff claims that another doctor, Dr. Anandjiwala, was responsible for conducting the x-ray. Further, while Plaintiff makes a conclusory allegation that Anandjiwala is "no longer licensed to practice in the State of Florida," he does not allege that Bassa knew of this alleged unauthorized practice or that being subject to Anandjiwala's care posed a substantial risk of serious harm to Plaintiff. Indeed, none of Bassa's alleged decisions amount to deliberate indifference, but "are 'classic example[s] of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." See Williams v. Barrow, 559 F. App'x 979, 985 (11th Cir. 2014) (quoting Adams, 61 F.3d at 1545). Plaintiff's Eighth Amendment claim against Bassa is due to be dismissed.[4]

### c. Figueroa

Figueroa argues that Plaintiff fails to allege that upon his transfer to Suwannee C.I., Figueroa was deliberately indifferent to Plaintiff's need for medical care by conduct that was more than mere negligence. See Figueroa Motion at 19-23. According to Figueroa, Plaintiff's allegations clearly state that Figueroa's determination about Plaintiff's post-surgical care turned on his professional medical judgment. Id. at 22.

---

[4] Because the Court finds Plaintiff fails to state a plausible claim for relief against Bassa, it declines to address Bassa's remaining arguments for dismissal.

In his Amended Complaint, Plaintiff alleges that Figueroa has wholly refused to treat Plaintiff for post-surgical trauma to his shoulder or back injuries as recommended by specialists, failed to honor medical passes issued at R.M.C., and never conducted an x-ray for a possible fractured elbow. See Doc. 7-1 at 7. He also claims that Figueroa's refusal to provide medical care has impaired Plaintiff's mobility and quality of life. Id. at 4. At this stage, taking Plaintiff's allegations as true, as the Court must, Plaintiff has sufficiently alleged that following his surgery and transfer to Suwannee C.I., Figueroa disregarded Plaintiff's need for medical treatment by conduct that is more than negligence. Plaintiff also sufficiently alleges that he suffered more physical injuries because of Figueroa's alleged deliberate indifference. As such, Figueroa's Motion is due to be denied as to this Eighth Amendment claim.

### d. Cruz

Cruz argues that Plaintiff fails to allege that he was deliberately indifferent to Plaintiff's serious medical needs upon his transfer to Suwannee C.I. See Cruz Motion at 17-20. Cruz states that Plaintiff fails to assert that Cruz participated in any deprivation of medical care, and "absent from the [C]omplaint are allegations that Dr. Cruz examined, diagnosed, or treated Plaintiff." Id. at 18. Rather, according to Cruz, Plaintiff's claims against Cruz are based on his role as "supervisor" of Figueroa and that Figueroa's alleged lack of medical care "lies at the heart of Plaintiff's claims." Id. To that end, he

contends that he cannot be liable based on respondeat superior; Plaintiff fails to allege facts showing some causal connection between Cruz's conduct and Figueroa's failure to follow the surgeon's post-surgical recommendations; and that Plaintiff has failed to allege "facts plausibly suggesting Dr. Cruz was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed <u>and</u> that Dr. Cruz actually drew the inference by conduct that is more than mere negligence." <u>Id.</u> at 22.

In his Response, Plaintiff argues that Cruz was personally aware of Plaintiff's need for care and participated in the alleged unconstitutional conduct. Cruz Resp. at 1. He contends that Cruz "oversees and answers all medical complaints and grievances and as such sees the need for serious medical care when going over medical records." <u>Id.</u> at 5. According to Plaintiff, he placed Cruz on notice of his need for medical care when he submitted two grievances – log # 1812-231-085 and log # 1905-231-015. <u>Id.</u> at 6. Plaintiff maintains that Cruz denied the grievances, and in doing so, Cruz likely reviewed Plaintiff's medical records detailing Plaintiff's extensive injuries. <u>Id.</u> at 6.

Accepting all of Plaintiff's factual allegations as true, the Court finds that Plaintiff fails to state a claim of deliberate indifference against Cruz. Unlike the allegations against Figueroa, Plaintiff does not allege that Cruz personally conducted a medical evaluation of Plaintiff and denied him specific

medical care. Instead, in alleging that Cruz had subjective knowledge, Plaintiff attaches to his Amended Complaint formal grievance log # 1905-231-015, and Cruz's written denial of that formal grievance.[5] See Doc. 7-1 at 26-27. That grievance stated in relevant part:

> I have only been seen by Dr. Figueroa one time at this institution where he stated that I would receive passes from this institution to correspond with passes I came here with from other institutions and hospital, including specialist doctors. I was also told that Dr. Winters would be contacted about post-surgical trauma I declared before coming here from hospital. None of this was done, nor was going to sick-call where I was told the passes I was to be given would be forthcoming as this institution would not allow those types of passes here. . . . .

Doc. 7-1 at 27. In denying the grievance, Cruz stated the following:

> Be advised your allegations against the health care staff are unfounded. Also you are advised that inmates do not have the authority to dictate disciplinary action on health care staff members. This was previously addressed with you by nursing during your sick call appointment on 2/14/19 and in an informal grievance #231-1902-0049 on 3/5/19. The informal response and the nurses explanation were appropriate and accurate responses. It was explained to you (2/14/19) that on 1/22/19 the MD noted in your chart "passes renewed according to policy.'" At that time you expressed understanding and gave a verbal warning to the nurse that "you would add the MD to you current law suit." On 1/22/19 the MD issued passes for Low Bunk, Restricted Activity (No push/pull > 20lbs & no stand

---

[5] Formal grievance log # 1812-231-085 is not attached to the Amended Complaint, thus, the Court cannot consider that grievance in addressing the sufficiency of Plaintiff's allegations against Cruz.

>20min.) and Wheel Chair w/ cushion. It is a clinical decision if an inmate will be issued a pass for medically necessary items. If you have any further medical questions or concerns you may access sick call to have them addressed.

Based on the foregoing you grievance is DENIED.

Doc. 7-1 at 26.

However, simply denying a grievance, without more, does not render a supervisory person liable for the allegedly unconstitutional conduct brought to light by the grievance. See Jones v. Eckloff, No. 2:12-cv-375-FTM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (unpublished) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)). Indeed, filing a grievance does not alone show that a supervisor had knowledge. See Nichols v. Burnside, 2011 WL 2036709, *3 (M.D. Ga. April 21, 2011) (finding that a grievance and letter to a supervisor does not alone make the supervisor liable); Logue, Jr. v. Chatham County Detention Center, 2010 WL 5769485, *4 (S.D. Ga. Dec. 29, 2010) (filing grievances with a supervisor "does not alone make the supervisor liable"); Weems v. St. Lawrence, 2009 WL 2422795, *4 n. 7 (S.D. Ga. Aug. 6, 2009) (finding letters and grievances to "jail's upper officials" was insufficient to show the defendants were on notice of a substantial risk of serious harm). Likewise, to the extent Plaintiff seeks to attribute liability to

Cruz under the theory of respondeat superior, it is well established in the Eleventh Circuit that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted).

Here, Cruz's only alleged involvement was reviewing and denying Plaintiff's grievances. Plaintiff does not contend that Cruz was involved in any decisions regarding Plaintiff's medical care or that he was responsible for a policy that was the moving force behind any alleged constitutional violation. While Plaintiff argues, although insufficiently, that Centurion has an alleged unconstitutional cost-saving policy for which Cruz is subject, the Court previously explained why those policy allegations fail, and any other alleged deprivation of medical care is attributable to Figueroa. Plaintiff's claims about Cruz's participation in the grievance process are insufficient to show that Cruz had "subjective knowledge of a risk of serious harm" and "disregarded that risk." As such, Plaintiff has failed to state a plausible claim for relief against Cruz under the Eighth Amendment.[6]

---

[6] Because the Court finds Plaintiff fails to state a plausible claim for relief against Cruz, it declines to address Cruz's remaining arguments for dismissal.

## Qualified Immunity

Figueroa argues that he is entitled to qualified immunity because he was acting within his discretionary authority and Plaintiff fails to sufficiently assert a claim against him. Figueroa Motion at 23-25. Therefore, according to Figueroa, the individual capacity claim against him should be dismissed with prejudice.

> "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)) . . . . Once it has been determined that the official was acting within his discretionary duties, the burden shifts to the plaintiff to show (1) that the official violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). Our inquiry "can begin with either prong." Morris v. Town of Lexington, 748 F.3d 1316, 1322 (11th Cir. 2014).

Marbury v. Warden, 936 F.3d 1227, 1232-33 (11th Cir. 2019) (internal citations modified). As found, Plaintiff has sufficiently alleged that Figueroa violated his Eighth Amendment rights by failing to provide adequate medical treatment following his transfer to Suwannee C.I. Deliberate indifference to a serious medical need of a prisoner violates such rights. See Estelle, 429 U.S. at 104 ("deliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."). Figueroa is thus not entitled to qualified immunity for that claim at the pleading stage.

## Exhaustion[7]

Because the Court has determined that Plaintiff has stated an Eighth Amendment claim against Figueroa, it now considers his argument about exhaustion. Figueroa argues that Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant § 1983 lawsuit. The PLRA requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). But Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199,

---

[7] On a motion to dismiss, a court will generally address a defendant's exhaustion arguments first. However, in this case, given the Court's findings, judicial economy justifies the Court's decision to address Defendants' arguments that Plaintiff fails to state a plausible claim before considering their exhaustion defense.

216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Figueroa bears "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). And "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao, 679 F. App'x at 824. However, the ordinary three-step procedure does not necessarily always apply. For example, a prisoner may skip the informal grievance step and immediately file a formal grievance for issues pertaining to various things, including "medical grievances" or "a formal grievance of a medical nature." Fla. Admin. Code r. 33-103.005(1); Fla. Admin. Code r. 33-103.008. If a prisoner can bypass the informal grievance step, he must typically file the formal grievance with the warden within 15 days from the date on which the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(b). A response must be provided to the inmate within 20 days of receipt of the formal grievance. Fla. Admin. Code r. 33-103.006(6). "If the inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office of the Secretary using Form DC1-303 (same form as a formal grievance)." Jenkins v. Sloan, 826 F. App'x 833, 835 (11th Cir. 2020) (citing Fla. Admin. Code Ann. R. 33-103.007). The grievance appeal to the Office of the Secretary must be received within 15 days from the date the response to the formal grievance is returned to the inmate. Fla. Admin. Code r. 33-103.11(c).

Here, Figueroa argues that Plaintiff failed to exhaust his Eighth Amendment claim against him. Figueroa Motion at 10-14. Figueroa asserts that after Plaintiff's transfer to Suwannee C.I., Plaintiff filed only two formal grievances referencing Figueroa. Id. at 12-13. According to Figueroa, Plaintiff

then failed to appeal the denial of those grievances. Id. at 13. Indeed, Figueroa argues that "since the alleged incident on August 31, 2018, Plaintiff has filed zero appeals with the Secretary of the FDOC." Id. at 13.

In Response, Plaintiff argues he did exhaust his administrative remedies about his denial of medical care at Suwannee C.I., including his claims against Figueroa. Figueroa Resp. at 5-6. In support of that assertion, he cites to record attachments and documents. Id. A review of the record shows that on December 27, 2018, officials at Suwannee C.I. received Plaintiff's formal grievance (log # 1812-231-085), which stated:

> I was transferred to this institution the 1st week of December 2018. since arriving I have filled out sick-call request to have passes from other institutions and orthopedic specialists recommendations issued from and for this camp, including notification of post surgical trauma and injury as filed and noted in grievance filed at lake butler grievance log number 1811-209-024, R.M.C. main unit dated 11-07-18. As of this date 12-21-18 I have not been seen by anyone concerning the post-surgical trauma or any other chronic health issues, nor have I received any of the required medical passes.

> I am certified A.D.A. listed as permanent wheelchair and have serious medical issues pertaining to injuries and post-surgical trauma and injury that are not being addressed at this institution, nor are any other of my other injuries being addressed i.e.: torn rotator cu[ff] RT. Shoulder, herniated disc L4, L5, &L5-S1 in back as listed in suit against Centurion Medical case no. 6:18-cv-451-ORL-40TBS Middle District – Federal Court.

> These issues need to addressed i.e.: passes issued,
> consult with doctor concerning medications for pain
> and other issues, post-surgical trauma, etc. I have
> received no care to date.

Doc. 30-2 at 19. On January 16, 2019, Cruz denied Plaintiff's formal grievance

(log # 1812-231-085), explaining the following:

> Investigation into your grievance reveals the
> following:
>
> It is the responsibility of your health care staff to
> determine the appropriate treatment regimen for the
> condition you are experiencing, including specialty
> consults, medication prescriptions, diagnostic testing,
> lab work, or passes. There is not indication that you
> have been denied access to medical or denied medical
> care. You were seen in sick call on 12/11/2018 to
> address your medical concerns. You have pending
> Chronic Clinic appointments coming up soon with the
> MD. You can address your need for special passes and
> specialty consults with the MD at that time. If you
> have further medical questions or concerns you may
> address them through sick call.
>
> Based on the foregoing your grievance has been
> DENIED.
>
> You may obtain further administrative review of your
> complaint by obtaining form DC1-303. Request for
> Administrative Review or Appeal, Completing the
> form, providing attachments as required by 33-
> 103.007(3)(a) and (b), F.A.C. and forwarding you
> complaint to the . . . within Fifteen (15) days from the
> date of this response.

Doc. 30-2 at 18. On January 25, 2019, Plaintiff submitted a grievance appeal

(log # 230-19-055) to the Secretary. Id. at 20. The appeal provided:

> This grievance concerns grievance log number 1812-231-085. This institution states there is no indication of denial of medical care. As state[d], I declared post-surgical trauma in November when it became apparent that surgery to shoulder was not healing, but getting worse. I was refused any further care for injury after receiving x-rays which did not nor could not show ligament muscle or cartilage damage, see grievance log number 1811-209-024 dated Nov. 7, 2018 which was sent back unprocessed stating I was mailed an answer. I never received such answer. I declared post-surgical trauma upon arriving at this institution on 12-27-18 after 3 week of no medical care or consult for this issue. In 6 weeks here and a total of 2 ½ months since declaring post-surgical trauma with disfigurement I have seen no doctor or anyone else concerning this issue. I was instructed at surgery what to look for and have complied with surgeons after-care instructions concerning post-surgical trauma and have been completely ignored. This need[s] immediate action as I am losing use of my left arm and I fear permanent damage.

Doc. 30-2 at 20. The Department of Corrections Inmate Grievance Appeals date stamped the appeal (log # 230-19-055) as received on February 4, 2019. Id. The record does not contain the Secretary's response to that appeal.

As previously mentioned in the Court's analysis of Plaintiff's Eighth Amendment claim against Cruz, the record also shows that on May 9, 2019, Plaintiff submitted formal grievance (log # 1905-231-015), which mentioned Figueroa's denial of medical care. See Doc. 7-1 at 27. On May 16, 2019, Cruz denied Plaintiff's formal grievance (log # 1905-231-015). See Doc. 7-1 at 26.

Plaintiff then appealed the denial to the Secretary (log # 19-6-21647) on May

24, 2019, which stated:

> I am sending this to you in hopes of resolving this issue as stated in grievance 1905-231-015. I have been at this institution for 5 ½ months. I came here with medical passes issued by orthopedic specialists to accommodate my injuries after declaring post-surgical trauma in Sept. 2018. I saw Dr. Figueroa on 1-22-19 who verbally stated that the button-up shirt pass and single bunk pass would be issued following specialist recommendations. They were not issued. I was told at sick-call on 2-14-19 that this camp does not honor those types of passes and do not follow specialists recommendations. I was also told that orthopedic doctor would be contacted about post-surgical trauma. This, also, was not done. Telling or giving making deceptive untrue or deceptive representation in/or relating to medical care or practice of medicine is in violation of state statutes governing medical care. Also, an institution policy which supersedes medical care from duly authorized specialist doctors is also in violation of state statutes and standards, not being medical professionals nor licensed as such but dictating medical policy contrary to statutory requirements. . . .
>
> I have no doctor or any other related specialist in medical field except for this as stated and this is supposed to be an A.D.A. institution. I have a left shoulder, severely damaged, still after surgery, a torn rotator cu[ff] in RT. Shoulder, and I am in a wheelchair with severe back injuries. I am receiving no medical care for injuries at all, so yes, I do have a law suit in progress. I require medical treatment and should not be forced to go to Att'ny general and justice department to get relief.

Doc. 7-1 at 28. The Secretary denied the appeal (log # 19-6-21647), finding:

> Appeal denied:
>
> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.
>
> It is determined that the response made to you by Dr. Cruz on 5/16/2019 appropriately addresses the issues you presented.

Doc. 1-1 at 12.[8]

Accepting Plaintiff's view of the facts as true, the Court finds dismissal of the claims against Figueroa for lack of exhaustion is not warranted at the first step of <u>Turner</u>. Thus, the Court proceeds to the second step of the two-part process where the Court considers Figueroa's arguments about exhaustion and makes findings of fact. In doing so, the Court finds that Figueroa has failed to carry his burden of showing that Plaintiff failed to exhaust his administrative remedies.

Figueroa does not dispute that Plaintiff properly completed the first step of the grievance procedure by filing a formal grievance. Instead, Figueroa

---

[8] To resolve a factual dispute about exhaustion, a district court may "consider facts outside of the pleadings . . . so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." <u>Bryant</u>, 530 F.3d at 1376 (footnotes omitted). The parties do not dispute the authenticity of the grievances attached to the original Complaint or the other grievances filed in this action, and consideration of these grievances would not decide the merits of the case. Therefore, the Court may consider these documents without converting Figueroa's Motion to a motion for summary judgment.

merely argues that "Plaintiff failed to appeal the denial of his formal grievance to the Secretary of FDOC"; and thus, his claims are unexhausted. Figueroa Motion at 13. However, the record shows that Plaintiff did file an appeal, and thus completed the FDOC's grievance procedure. As such, Figueroa's Motion is due to be denied on this issue.

## Injunctive Relief

Figueroa argues that Plaintiff's request for injunctive relief against him in his individual capacity should be dismissed because § 1983 does not permit injunctive relief against state officers sued in their individual capacities.[9] Figueroa Motion at 15. In support, Figueroa relies on the Seventh Circuit Court of Appeals' opinion in Greenawalt v. Indiana Dep't of Corr., 397 F.3d 587, 589 (2005), in which the court said, "[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." He also relies on a footnote in the Tenth Circuit Court of Appeals' opinion in Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011), in which the court states, "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." In his Response, Plaintiff argues that he intends to

---

[9] Figueroa also argues that Plaintiff has failed to demonstrate that he is entitled to a preliminary injunction or a temporary restraining order. Figueroa Motion at 15-16. Plaintiff does not appear to request such an extraordinary remedy at this time, thus, the Court declines to consider Figueroa's argument on such.

sue Figueroa in his official capacity and his individual capacity for any forms of relief available. Figueroa Resp. at 6.

The Court is unaware of an Eleventh Circuit decision that specifically decided whether it is proper to seek injunctive relief against a state official sued in their individual capacity under § 1983. Figueroa cites a footnote from Edwards v. Wallace Cmty. College, 49 F.3d 1517, 1524 n.9 (11th Cir. 1995), in which the circuit court passingly noted, "Qualified immunity does not pertain to claims for injunctive or declaratory relief, because these claims are considered to be official capacity claims against the relevant governmental entity." Id. (quoting Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees § 9.12 (2d ed. 1991)). But in that case, the Eleventh Circuit ultimately stated that since that plaintiff's underlying individual capacity claim failed, then the plaintiff's request for injunctive relief against that individual failed. See Edwards, 49 F.3d at 1524 n.9. Notably, in Attwood v. Clemons, 818 F. App'x 863 (11th Cir. 2020), the Honorable Britt Grant wrote an extensive concurrence analyzing the distinction between individual and official capacity claims raised in a § 1983 case, and noted that a successful § 1983 suit targeting a government official in their individual capacity "may result in an award of monetary damages, declarative relief, or injunctive relief to correct the constitutional violation." Attwood, 818 F. App'x at 872 (Grant, J., concurring in part). The majority, however, took "no position

on the concurrence's view," explaining it would not make a finding on an issue not before it. Id. at 869; see also Executive 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1542 n.7 (11th Cir. 1991) ("[W]e do not reach the issue of whether suits against officials for prospective injunctive relief may be brought only against defendants in their official capacities.").

Here, Figueroa does not dispute that Plaintiff can proceed with his request for injunctive relief against him in his official capacity. Because that request will proceed and given the current procedural posture, the Court declines to find that injunctive relief against Figueroa in his individual capacity cannot remedy Plaintiff's alleged constitutional violation. See, e.g., Hall v. Jarvis, No. 3:10-cv-442-99MMH-TEM, 2011 WL 971125, at *6 (M.D. Fla. Mar. 2, 2011) (considering same argument on a motion to dismiss, explaining "[u]nder these circumstances, whether [p]laintiff is seeking injunctive and declaratory relief against [d]efendant in his official or individual capacity seems practically inconsequential . . . . In either capacity, [d]efendant is the person to be enjoined – and no one else."). Thus, Figueroa's Motion will be denied without prejudice on this issue.

## Monetary Damages

Figueroa asserts that Plaintiff's request for monetary damages must be dismissed because he fails to allege a physical injury resulting from Figueroa's purported unconstitutional acts. See Figueroa Motion at 17-19. In his

Response, Plaintiff states that Figueroa's failure to provide adequate post-surgical treatment upon his transfer to Suwannee C.I. caused his shoulder to heal improperly and left Plaintiff with minimal use and reduced mobility in his left arm. Figueroa Resp. at 7. Viewing the facts in the light most favorable to Plaintiff, Plaintiff has alleged that Figueroa's purported deliberate indifference resulted in physical injuries, as required under the PLRA. Therefore, Figueroa's Motion is due to be denied on this issue.

## Violation of Florida Statutes

Last, Figueroa seeks dismissal of Plaintiff's claims that Figueroa violated Chapters 458 and 456, Florida Statutes, which outline the regulations of professions and occupations including licensed physicians. See Figueroa Motion at 9. Figueroa argues these claims should be dismiss because § 1983 is not an appropriate means to enforce state-created rights. Id. In his Response, Plaintiff argues that he is not trying to enforce state laws in this action, but cited these state statutory provisions "solely for purpose under color of [l]aw to show discriminatory actions made by Defendants . . . ." Figueroa Resp. at 5. While Plaintiff's argument is not entirely clear, he appears to mention these state statutes in hopes of prompting professional disciplinary actions against Defendants with the Board of Medicine. However, § 1983 is not the appropriate vehicle to initiate such state administrative proceedings. Thus, these claims are dismissed.

In consideration of the foregoing, it is now

**ORDERED**:

1.     Defendant Bassa's Motion to Dismiss (Doc. 19) is **GRANTED to the extent** that Plaintiff's claims against Bassa under the ADA, RA, Fourteenth Amendment, and Eighth Amendment are **DISMISSED with prejudice**. The **Clerk** shall terminate Bassa as a Defendant in this case.

2.     Defendant Cruz's Motion to Dismiss (Doc. 20) is **GRANTED to the extent** that Plaintiff's claims against Cruz under the ADA, RA, Fourteenth Amendment, and Eighth Amendment are **DISMISSED with prejudice**. The **Clerk** shall terminate Cruz as a Defendant in this case.

3.     Defendant Figueroa's Motion to Dismiss (Doc. 21) is **GRANTED to the extent** that Plaintiff's claims against Figueroa under the ADA, RA, Fourteenth Amendment, and Chapters 458 and 456, Florida Statutes, are **DISMISSED with prejudice**. The Motion (Doc. 21) is otherwise **DENIED**.

4.     Defendant Centurion's Motion to Dismiss (Doc. 22) **is GRANTED to the extent** that Plaintiff's claims against Centurion under the ADA, RA, Fourteenth Amendment, and Eighth Amendment are **DISMISSED with prejudice**. The **Clerk** shall terminate Centurion as a Defendant in this case.

5.     This case will proceed on Plaintiff's Eighth Amendment claim against Defendant Figueroa. Defendant Figueroa shall file an answer to the

Amended Complaint **by July 26, 2021**. After Figueroa files his answer, the Court will set further deadlines by separate order.

 **DONE AND ORDERED** at Jacksonville, Florida, this 30th day of June, 2021.


_____
   BRIAN J. DAVIS
 United States District Judge




Jax-7

C: Larkin Derks, #849475
  counsel of record